FILED

May 3 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0354

DA 15-0354

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 98

_____

DRAGGIN' Y CATTLE COMPANY,
INC.; and ROGER and CARRIE PETERS,

     Plaintiffs, Appellees, and Cross-Appellants,

  v.

LARRY ADDINK; and JUNKERMIER,
CLARK, CAMPANELLA, STEVENS, P.C,

     Defendants and Appellees,

  and

NEW YORK MARINE AND GENERAL
INSURANCE COMPANY,

     Intervenor and Appellant.

_____

O P I N I O N
A N D
O R D E R

¶1    New York Marine and General Insurance Company appeals the order of the Eighteenth Judicial District Court, Gallatin County, denying its motion for discovery regarding the reasonableness of the stipulated settlement between Roger and Carrie Peters and Draggin' Y Cattle Company, Inc., (collectively Peters) and Junkermier, Clark, Campanella, Stevens, P.C., and Larry Addink (collectively Junkermier). Peters cross-appeal the District Court's dismissal of their cross-claim seeking a declaration that New York Marine is liable to pay the stipulated settlement. While the parties raise multiple issues on appeal, we restate the dispositive issue as follows:

*Whether New York Marine timely raised its disqualification claim, and if so, whether the claim should be considered on the merits because the judge did not disclose circumstances that could potentially cause the judge's impartiality to be reasonably questioned.*

¶2 We remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 This matter has been before this Court on a previous occasion. *Draggin' Y Cattle Co. v. Addink*, 2013 MT 319, 372 Mont. 334, 312 P.3d 451 (hereafter *Draggin' Y I*). Because the underlying suit's background facts are delineated in *Draggin' Y I*, we restate the facts only briefly.

¶4 In January 2011, Peters filed a complaint against Junkermier alleging multiple counts stemming from tax services Junkermier performed for Peters. Junkermier tendered the defense to New York Marine, which insured Junkermier under a professional liability policy. Thereafter, New York Marine defended Junkermier subject to a reservation of rights.

¶5 Junkermier eventually moved for summary judgment in the underlying action on the ground that Peters's claims were barred by the statute of limitations. The District Court granted Junkermier's motion for summary judgment in December 2012 and Peters appealed. In *Draggin' Y I*, we concluded that Peters's claims were timely filed. *Draggin' Y I*, ¶ 51. Accordingly, we reversed the District Court's order granting Junkermier summary judgment and remanded for further proceedings. *Draggin' Y I*, ¶ 51.

2

¶6 On remand, Peters filed a motion for substitution of district court judge pursuant to § 3-1-804(12), MCA. Judge Huss assumed jurisdiction in December 2013. Litigation continued for nearly a year and then on November 13, 2014, Peters and Junkermier entered into a settlement agreement and stipulation for entry of judgment without New York Marine's participation. Shortly thereafter, the District Court issued an order scheduling a hearing on the stipulated settlement's reasonableness.[1]

¶7 Prior to the hearing, New York Marine filed a motion to intervene and request for stay, discovery, and status conference. On December 15, 2014, the District Court granted New York Marine's motion to intervene but denied its motions for additional discovery and to stay the reasonableness hearing. The court held the reasonableness hearing that same day. At the hearing, Peters filed a cross-claim seeking a declaration that New York Marine was liable to pay the stipulated settlement under the insurance contract.

¶8 On March 5, 2015, the District Court entered findings of fact, conclusions of law, and an order finding that the stipulated settlement amount was reasonable. On May 6, 2015, the court entered judgment in the amount of $10,000,000 in Peters's favor and further ordered that Junkermier was not liable for the stipulated settlement. The court dismissed Peters's cross-claims on June 5, 2015, on the ground that the federal district court retained jurisdiction over all claims filed by New York Marine in the federal court.

---

[1] On the same day, New York Marine filed a complaint against Junkermier for declaratory relief and breach of contract in the United States District Court for the District of Montana, Great Falls Division. That case remains pending.

3

New York Marine appeals the District Court's order denying its motion for discovery on the reasonableness of the settlement. Peters cross-appeal the June 5 order of dismissal.

¶9 On appeal, New York Marine asserts for the first time that Judge Huss erred by not disclosing an apparent conflict of interest. New York Marine claims that the alleged conflict stems from a complaint that a former court reporter filed against Judge Huss in February 2014. In October 2014—during the pendency of this case—Judge Huss individually entered into a stipulation and confession of judgment. The Office of the Court Administrator (OCA) had been paying for Judge Huss's defense and Judge Huss allegedly entered into the stipulated settlement without the OCA's participation or knowledge. On November 17, 2014—four days after Peters and Junkermier entered into their stipulated settlement—the OCA filed a complaint against Judge Huss in a Helena district court seeking a declaration that it had no duty to defend or indemnify him. In its complaint, the OCA specifically contested the stipulated settlement amount's reasonableness. Judge Huss did not disclose the stipulated settlement or his dispute with the OCA to the parties in the case at issue. Judge Huss resigned effective January 1, 2016.

**STANDARD OF REVIEW**

¶10 We recently adopted a standard of review for analyzing judicial disqualification under the Montana Code of Judicial Conduct. *State v. Dunsmore*, 2015 MT 108, ¶ 10, 378 Mont. 514, 347 P.2d 1220. Our "inquiry into disqualification requires an objective examination of the circumstances surrounding" potential judicial disqualification and "an

4

accurate interpretation" of the Montana Code of Judicial Conduct. *Dunsmore*, ¶ 10. Accordingly, we review judicial disqualification questions de novo, "determining whether the lower court's decision not to recuse was correct under the Montana Code of Judicial Conduct." *Dunsmore*, ¶ 10.

## DISCUSSION

¶11 *Whether New York Marine timely raised its disqualification claim, and if so, whether the claim should be considered on the merits because the judge did not disclose circumstances that could potentially cause the judge's impartiality to be reasonably questioned.*

¶12 On appeal, New York Marine asserts that Judge Huss's potential conflict of interest raises reasonable questions regarding his impartiality. New York Marine contends that the "undeniable parallels between Judge Huss' interests in the litigation he was (and still is) defending in his personal capacity and [Peters's] interests in not permitting [New York Marine] to meaningfully challenge the stipulated settlement" create "an apparent and significant conflict of interest." As such, New York Marine claims that Judge Huss was required, at a minimum, to disclose his apparent conflict of interest to the parties under the Montana Code of Judicial Conduct. New York Marine accordingly asserts that Judge Huss erred by failing to disclose the potential grounds for disqualification. Finally, New York Marine claims that the issue is properly before this Court on appeal because it "only became aware of the facts giving rise to Judge Huss' potential bias in May 2015, when it discovered that Judge Huss had submitted a letter of resignation (dated April 21, 2015 and effective January 1, 2016) and investigated the circumstances behind that resignation."

5

¶13 Peters counter that the issue is not properly before this Court because New York Marine raises it for the first time on appeal. Peters contend that the information regarding the potential conflict of interest is not in the record and that New York Marine may not address additional matters on appeal because it is bound by the record before the District Court. Accordingly, Peters urge this Court to "strike all such material" concerning the potential conflict of interest. They assert further that New York Marine had the opportunity to raise the issue in the District Court because the judgment did not become final until Judge Huss entered the order dismissing Peters's cross-claims on June 5, 2015—a month after New York Marine claims that it discovered the information on which it bases its disqualification argument. Finally, Peters claim that Judge Huss's "personal experience" does not require disqualification under the Montana Code of Judicial Conduct. Peters assert that under New York Marine's "formulation, a judge who is in a car accident should not preside over a car accident case, because there may be an 'appearance of impropriety' based on the judge's personal experience."

¶14 New York Marine requests that we take judicial notice of a number of exhibits—which are attached to its opening brief on appeal—regarding Judge Huss's stipulated settlement and the ensuing dispute with the OCA. The OCA's complaint for declaratory judgment against Judge Huss is a record of a court of this state of which we take judicial notice. M. R. Evid. 202(b)(6), (d). *See Farmers Plant Aid, Inc. v. Fedder*, 2000 MT 87, ¶¶ 26-27, 299 Mont. 206, 999 P.2d 315 (concluding that M. R. Evid. 202(b)(6) allows a

6

court to take judicial notice of proceedings in other cases). The complaint alleges sufficient facts to inform our inquiry for purposes of this Opinion.

¶15 It is well established that we generally do not consider issues raised for the first time on appeal. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 20, 373 Mont. 1, 313 P.2d 839 (citations omitted). This Court, however, reserves the power to consider an issue raised for the first time on appeal if the issue "affects the substantial rights of a litigant." *Cottrill v. Cottrill Sodding Serv.*, 229 Mont. 40, 42, 744 P.2d 895, 896 (1987) (quoting *In the Matter of N.B.*, 190 Mont. 319, 323, 620 P.2d 1228, 1231 (1980)) (internal quotations omitted). *Accord State v. Carter*, 2005 MT 87, ¶ 13, 326 Mont. 427, 114 P.3d 1001; *Eastman v. Atl. Richfield Co.*, 237 Mont. 332, 337, 777 P.2d 862, 865 (1989). "It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process." *Dunsmore*, ¶ 11. This basic requirement "includes the requirement that any judge who is biased or partial with regard to a particular matter or party be disqualified from hearing the case." *Dunsmore*, ¶ 11. Furthermore, this Court reserves the right to address issues raised for the first time on appeal "if extenuating circumstances justify the party's failure to assert [its] legal theory at trial." *Pilgeram*, ¶ 21 (citing *Marcus Daly Memorial Hosp. Corp. v. Borkoski*, 191 Mont. 366, 369, 624 P.2d 997, 999 (1981); *Carter*, ¶ 13).

¶16 We conclude that New York Marine raises a claim sufficient to invoke its substantial right to due process because of Judge Huss's potential conflict of interest. We conclude further that the combination of several factors presents extenuating

7

circumstances justifying New York Marine's failure to raise the issue at trial. These factors include: Judge Huss's failure to disclose the potential conflict of interest; the nature of that conflict; Judge Huss's announcement of his resignation; the fact that New York Marine did not discover the potential grounds for disqualification until at least a month after the court's approval of the settlement; and the additional fact that final judgment was entered shortly after the potential conflict's initial discovery. Furthermore, New York Marine's claims present a number of significant issues impacting the judiciary's integrity that this Court has not yet addressed. We deem it appropriate, under these circumstances, to consider whether the merits of New York Marine's claim should be reached even though it did not raise the claim until it filed this appeal.

¶17 We turn first to Peters's contention that New York Marine had sufficient opportunity to raise its disqualification claim before the District Court. Although not stated directly, Peters essentially argue that New York Marine waived its disqualification claim by not raising it prior to Judge Huss's June 5, 2015 final order.

¶18 "The 2008 Montana Code of Judicial Conduct 'establishes standards for the ethical conduct of judges and judicial candidates.'" *Reichert v. State*, 2012 MT 111, ¶ 41, 365 Mont. 92, 278 P.3d 455 (quoting M. C. Jud. Cond., Preamble [3]). Rule 2.12 of the Montana Code of Judicial Conduct and §§ 3-1-803, and -805, MCA, governs judicial disqualification. *See Dunsmore*, ¶ 12; *Reichert*, ¶¶ 41-51. Rule 2.12(C) provides that disqualification claims may be waived by the parties unless disqualification is "for bias or prejudice under paragraph (A)(1)." M. C. Jud. Cond., Rule 2.12(C). New York Marine

does not assert that Judge Huss had "a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." M. C. Jud. Cond., Rule 2.12(A)(1). Rather, New York Marine relies on Rule 2.12(A) to assert that Judge Huss's "impartiality might reasonably be questioned" based on the nature and timing of his potential conflict of interest. M. C. Jud. Cond., Rule 2.12(A). As such, New York Marine's disqualification claim is subject to waiver. *Dunsmore*, ¶¶ 18-19 (concluding that disqualification claims may be waived under Rule 2.12(C) unless the claim is for bias or prejudice under Rule 2.12(A)(1)).

¶19 We recently adopted a "timeliness requirement" to determine whether a party has waived a disqualification claim under Rule 2.12. *Dunsmore,* ¶ 18. Under this requirement, "A claim for disqualification of a judge must be brought within a reasonable time after the moving party learns the facts forming the basis for a claim that the judge should be disqualified." *Dunsmore,* ¶ 20. If a party does not raise its disqualification claim "within a reasonable time" of learning the facts underlying its claim, the claim is waived. *Dunsmore,* ¶ 20.

¶20 In *Dunsmore,* the judge in question conducted a sentencing proceeding "a little over a year after charges were filed" against the party asserting a disqualification claim. *Dunsmore,* ¶ 5. We observed that the party knew of the factual basis for the claim prior to the sentencing proceeding, "but did not raise disqualification." *Dunsmore,* ¶ 20. We determined that the party asserting disqualification "made an apparent tactical decision not to seek [the judge's] disqualification" by waiting until after the sentencing proceeding

9

to assert the disqualification claim. *Dunsmore*, ¶ 19. Accordingly, we concluded that the party did not bring its disqualification claim within a reasonable time and therefore waived the claim. *Dunsmore*, ¶ 20.

¶21 The instant case is distinguishable from *Dunsmore*. Here, New York Marine asserts that it did not learn of the factual basis for its disqualification claim until May 2015. The District Court dismissed Peters's cross-claims in a June 5, 2015 order. New York Marine, therefore, had about a month to investigate and raise its disqualification claim before Judge Huss's final order. Furthermore, New York Marine allegedly learned of the potential conflict of interest around the same time that the court entered judgment in Peters's favor on May 6, 2015, and about two months after the court declared that the stipulated settlement was reasonable. The court, therefore, already had decided the primary issues against New York Marine. Consequently, it appears that New York Marine did not make "an apparent tactical decision not to seek [Judge Huss's] disqualification" prior to raising the issue on appeal. *Dunsmore*, ¶ 19. Under these circumstances, we conclude that New York Marine raised its claim for disqualification "within a reasonable time" after learning of the circumstances underlying the claim. *Dunsmore*, ¶ 20. Accordingly, New York Marine did not waive its disqualification claim.

¶22 We emphasize that the timeliness requirement we adopted in *Dunsmore* ordinarily will mean that a party must raise a disqualification issue before a district court. Rule 2.12 contemplates that a judge against whom a disqualification claim is asserted should have

appropriate opportunity to address the claim in the first instance. M. C. Jud. Cond., Rule 2.12(C) ("A judge subject to disqualification under this Rule . . . may disclose in writing or on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to waive disqualification."). Disqualification issues, therefore, may be resolved by the court itself. *See* M. C. Jud. Cond., Rule 2.7 ("A judge shall hear and decide matters assigned to the judge, except when disqualification *is required* by Rule 2.12 or other law." (Emphasis added)). A party also may seek disqualification by invoking the procedures of § 3-1-805, MCA. In either case, a party may and ordinarily should raise disqualification issues discovered after an order or final judgment as a motion for relief from judgment in accordance with M. R. Civ. P. 60(b). *See Forsmark v. State*, 349 N.W.2d 763, 768 (Iowa 1984) (addressing a disqualification claim brought in a petition to vacate judgment under the Iowa Rules of Civil Procedure); *Blaisdell v. City of Rochester*, 609 A.2d 388, 390 (N.H. 1992) (addressing a disqualification claim brought in a post-final judgment motion to recuse and vacate). Given that we are announcing this principle for the first time here, however, we do not conclude in this case that New York Marine waived its disqualification argument by failing to file a Rule 60(b) motion. Future parties in a similar situation should raise disqualification in accordance with Rule 60(b) in order to preserve the claim for appeal.

¶23 New York Marine claims that Judge Huss, at a minimum, was obligated to disclose information to the parties that he believed might reasonably be relevant to a

11

potential disqualification claim. New York Marine contends further that "it is hard to argue that there was not, at the very least, the appearance of impropriety in Judge Huss' ruling on [New York Marine's] motion to intervene and on the reasonableness of the stipulated judgment." We decline to address whether Rule 2.12 required Judge Huss to disqualify himself. This would have been the issue if Judge Huss had disclosed the potential conflict of interest and refused to recuse himself. Under the current situation, however, New York Marine did not have adequate opportunity to raise its disqualification claim earlier because it did not learn of the potential problem until Judge Huss's April 2015 letter of resignation became public. We therefore address whether Judge Huss initially should have disclosed the circumstances to the parties.

¶24 The circumstances under which a judge should disclose information that reasonably may cause a party to question the judge's impartiality present an issue of first impression in Montana. The Preamble to the Montana Code of Judicial Conduct provides, in part, "Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest public confidence in their independence, impartiality, integrity, and competence." M. C. Jud. Cond., Preamble [2]. In order to maintain the dignity of judicial office, the Code mandates, "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." M. C. Jud. Cond., Rule 2.12(A). *See also Dunsmore*, ¶ 11.

12

¶25    Rule 2.12(C) provides, "A judge subject to disqualification under this Rule . . . *may* disclose in writing or on the record the basis of the judge's disqualification." M. C. Jud. Cond., Rule 2.12(C) (emphasis added). Comment 5 to Rule 2.12 provides further, "A judge *should* disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification." M. C. Jud. Cond., Rule 2.12 cmt. [5] (emphasis added). Rule 2.12(C) and Comment 5 counsel that a judge has a duty to disclose information that may be grounds for disqualification under Rule 2.12 unless the judge voluntarily recuses himself or herself on the basis of that information. This conclusion comports with a judge's affirmative duty to "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." M. C. Jud. Cond., Rule 2.12(A). *See also* M. C. Jud. Cond., Rule 2.12 cmt. [2] ("A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed."). The Code undoubtedly requires judges to disqualify themselves if a party might reasonably question their impartiality. In order for the party to be informed of the circumstances, a judge should disclose information that is relevant to a possible motion for disqualification. Furthermore, disclosure under Rule 2.12 advances one of the Code's fundamental purposes—promoting confidence in the judiciary. *See* M. C. Jud. Cond., Rule 1.2 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and

13

the appearance of impropriety."); M. C. Jud. Cond., Rule 2.2 ("A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially.").

¶26 Montana's Code of Judicial Conduct is based on the ABA Model Code of Judicial Conduct. *Dunsmore*, ¶ 12. "We adopted the ABA Model Code of Judicial Conduct . . . in part because it would allow us to consider a well-developed body of case law from other jurisdictions." *Dunsmore*, ¶ 16 (citing *In the Matter of the 2008 Montana Code of Judicial Conduct*, No. AF 08-0203 (Mont. Dec. 12, 2008)). A number of jurisdictions that have adopted the Model Code interpret their equivalent to Rule 2.12 as requiring judges to disclose information that may be grounds for disqualification. *E.g.*, *Forsmark*, 349 N.W.2d at 768 (concluding that a judge has "a duty to disclose" potential disqualifying information and that the "judge's failure to disclose the information deprived plaintiffs of the opportunity to make a timely request that he disqualify himself on the ground . . . that 'his impartiality might reasonably be questioned'"); *Blaisdell*, 609 A.2d at 390 (concluding that it is a "judge's responsibility to disclose, *sua sponte*, all information of any potential conflict between [the judge] and the parties or their attorneys when [the judge's] impartiality might reasonably be questioned"); *Adams v. State*, 601 S.W.2d 881, 884 (Ark. 1980) (concluding that if Arkansas's equivalent to Rule 2.12(A) "is applicable, then the judge must disqualify on [the judge's] own initiative or must comply with [the equivalent to Rule 2.12(C)] on [the judge's] own initiative").

¶27 Peters contend that Judge Huss was not required to disclose his personal settlement because requiring disqualification under the circumstances at issue here is

14

equivalent to requiring disqualification from a car accident case of a judge who has been involved personally in a car accident. We are unpersuaded by this contention because the situations are distinguishable.

¶28 The Code defines "impartiality" as an "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." M. C. Jud. Cond., Terminology, "Impartiality." Comment 1 to Rule 2.12 makes clear that "a judge is disqualified whenever the judge's impartiality might reasonably be questioned." M. C. Jud. Cond., Rule 2.12 cmt. [1].

¶29 A judge's average personal experiences—including being involved in a car accident—undoubtedly shape the judge's perspective. This does not mean, however, that such experiences necessarily preclude a judge from maintaining an "open mind in considering issues that may come before a judge." M. C. Jud. Cond., Terminology, "Impartiality." As such, a judge's average personal experiences do not generally lead to reasonable questions about the judge's impartiality and subsequent disqualification under Rule 2.12. Rule 2.7 reinforces this conclusion. It provides, "A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.12 or other law." M. C. Jud. Cond., Rule 2.7. Comment 1 to Rule 2.7 explains:

> Although there are times when disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity, and impartiality of the judiciary, judges must be available to decide matters that come before the courts. Unwarranted disqualification may bring public disfavor to the court and to the judge personally. The dignity of the court, the judge's respect for fulfillment of judicial duties,

15

and a proper concern for the burdens that may be imposed upon the judge's colleagues require that a judge not use disqualification to avoid cases that present difficult, controversial, or unpopular issues.

M. C. Jud. Cond., Rule 2.7 cmt. [1]. If a judge's average personal experiences required disqualification under Rule 2.12, judges would not be "available to decide matters that come before the courts." M. C. Jud. Cond., Rule 2.7 cmt. [1]. Such "[u]nwarranted disqualification" is prohibited by the Code. M. C. Jud. Cond., Rule 2.7 cmt [1].

¶30 The alleged ground for disqualification here, however, is not an average personal experience. Only a few weeks before Peters and Junkermier entered into their stipulated settlement, Judge Huss entered into a stipulated settlement stemming from a lawsuit against him individually. A month before Judge Huss held a hearing to determine the reasonableness of the stipulated settlement at issue here, the OCA—which acted as an insurer by paying for Judge Huss's defense—filed a complaint in which it claimed that Judge Huss's personal stipulated settlement was unreasonable. In other words, Judge Huss presided over a hearing in which an insurer questioned the reasonableness of a stipulated settlement while the reasonableness of his own personal stipulated settlement was being questioned by his insurer. The timing and nature of the circumstances reasonably raise concerns regarding Judge Huss's ability to maintain "an open mind in considering" the reasonableness of the stipulated settlement at issue here. M. C. Jud. Cond., Terminology, "Impartiality." Accordingly, Judge Huss's "impartiality might reasonably be questioned" under Rule 2.12(A). We conclude that, under these circumstances, Judge Huss was required to disclose his participation in his personal

16

stipulated settlement to the parties under Rule 2.12(C) because the circumstances might lead to reasonable questions regarding Judge Huss's impartiality.

¶31    Based on the foregoing analysis, we hold that New York Marine did not waive its disqualification claim.  We conclude that the presiding judge should have disclosed circumstances that could potentially cause the judge's impartiality reasonably to be questioned.  We decline to determine on appeal, however, whether Judge Huss should have been disqualified for cause.  That is a determination that requires findings of fact and conclusions of law following the presentation of evidence—a matter that may not be addressed in the first instance by an appellate court.  Accordingly, we determine that the appropriate course of action is to refer the disqualification issue to a district judge to hear the matter pursuant to § 3-1-805, MCA.  An order of assignment will follow.  The ruling on the disqualification motion may be appealed by either party.  Until that process is concluded, it would be premature to consider whether the District Court's orders and final judgment should be reversed because of the presiding judge's failure to recuse himself.  We decline to address the other issues raised on appeal at this time.

¶32    IT IS THEREFORE ORDERED that the appeal is DISMISSED without prejudice, pending referral to a district judge for hearing New York Marine's request for disqualification for cause.  An appropriate order of assignment will follow in due course.

DATED this 3rd day of May, 2016.


/S/ BETH BAKER

17

We concur:

/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Chief Justice Mike McGrath and Justice Micheal E Wheat recused themselves from participation in this case.

Justice Jim Rice, concurring.

¶33 I concur in the Court's opinion, and because it correctly states the law, I have signed it. This case takes us into new territory and I understand the Court's desire to carefully lay out the procedures to be followed to address the serious charge of judicial impartiality and the manner in which to raise it and test it, including the entry of findings and conclusions after a hearing, and to remand for such a process to be undertaken. However, on the basis of what is the uncontested material evidence that the presiding judge, at the time he was approving a stipulated judgment over the objections of the insurer in this case, was likewise entering a stipulated judgment in personal litigation at the potential detriment of his insurer, and for which he would similarly seek judicial approval, I would go further. If there were four votes to do so, I would reverse the May 2015 judgment and June 2015 dismissal order entered by the presiding judge and remand

18

this matter for further proceedings before a new judge, who would review and decide New York Marine's motion for discovery, the stipulated judgment's reasonableness, and New York Marine's motion to dismiss Peter's cross-claims. I see no point in prolonging this litigation to conduct an evidentiary hearing on disqualification, at which the presiding judge, who has now resigned under circumstances related to his stipulated judgment, will be called to opine on these circumstances in testimony, and whose credibility on these matters must inevitably be contested; then for entry of an order, and then for a subsequent appeal from that order (*see* Opinion, ¶ 30). In my view, a clear basis for disqualification has already been established and should be ordered to ensure the appearance of, and the public's confidence in, a fair and impartial judiciary.

/S/ JIM RICE

Justice Patricia Cotter joins in the concurring Opinion of Justice Rice.

/S/ PATRICIA COTTER

Justice Laurie McKinnon, concurring in part and dissenting in part.

¶34    I agree that this matter should be dismissed without prejudice for a district judge to consider the issue of Judge Huss's impartiality. In my opinion, however, the Court unnecessarily concludes that Judge Huss was required to disclose his personal settlement. We have not addressed such an issue previously and I would refrain from doing so given the absence of any record or decision of the trial court regarding the specific issue of

19

disclosure or a decision from the Judicial Standards Commission. As a result, I fear the Court has announced a new rule of judicial disclosure concerning the personal and subjective circumstances of a trial judge which ultimately will prove problematic and unmanageable for trial courts given the absence of any factual record supporting, explaining, or substantiating the Court's reasoning and the multitude of personal situations that potentially could be relevant for disclosure.

¶35 Indeed, it is not clear what relevance Judge Huss's failure to disclose has to the issue of disqualification or even whether the matter is more appropriately committed to a disciplinary proceeding. Significantly, a trial judge has many personal experiences which are common to those of the litigants appearing before him. Some experiences, for example a trial judge presiding over a contested parenting proceeding when he is also involved in a contested parenting proceeding involving his own children, would not appear to require disclosure—except upon the existence of particularly relevant facts. The Court has deemed disclosure was required because a legal process utilized by Judge Huss was similarly utilized by Peters—contesting the reasonableness of a stipulated settlement. It would seem at first glance that there would be a sundry of legal proceedings that a trial judge may be involved in personally that would parallel those upon which he was presiding over as trial judge. This is why a decision that Judge Huss was required to disclose must first take place through a fact-finding process in order to clarify the nexus and relevance of the disqualifying circumstances to the issue of the

judge's impartiality.  It is axiomatic that such an evidentiary process cannot occur in this Court.

¶36    With this one exception regarding the rendering of an advisory opinion on judicial disclosure, I agree that this matter should be dismissed for a hearing on the issue of Judge Huss's impartiality.


/S/ LAURIE McKINNON