FILED

01/30/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0355

DA 17-0355

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 14

MICHAEL PETER BORGES,

        Plaintiff and Appellant,

   v.

MISSOULA COUNTY SHERIFF'S OFFICE
and MISSOULA COUNTY DETENTION FACILITY,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DV-15-949
                      Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                James P. O'Brien, O'Brien Law Office P.C., Missoula, Montana

        For Appellee:

                Kirsten Pabst, Missoula County Attorney, Matt Jennings, Deputy Missoula
                County Attorney, Missoula, Montana

                            Submitted on Briefs:  November 29, 2017

                                      Decided:  January 30, 2018

Filed:

                                 _____
                                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Michael Borges worked as a juvenile detention officer at the Missoula County Detention Facility from 2006 to 2015. He informed his supervisors and human resources personnel in May 2014 that he had been diagnosed with Autism Spectrum Disorder and experienced debilitating hypersensitivity to fragrances. Borges filed a complaint with the Human Rights Bureau (HRB) on October 31, 2014, alleging that the detention facility and the Missoula County Sheriff's Office (collectively, the "County") had illegally discriminated against him based on his disability. The HRB's investigation found no reasonable cause to believe that the County had discriminated against Borges. The Fourth Judicial District Court later awarded summary judgment to the County on Borges's discrimination complaint. Borges appeals. We affirm.

¶2 We address the following issues:

*1. Whether the District Court erred in declining to consider facts that arose after Borges filed his October 31, 2014 HRB complaint;*

*2. Whether the District Court erred in concluding that no genuine issue of material fact existed as to the County's alleged failure to engage in an interactive dialogue or to provide a reasonable accommodation.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Borges began working at the detention facility in November 2006. He regularly received good performance reviews, was promoted to a mid-level supervisory position in 2010, and was named the 2010 Missoula County Outstanding Employee of the Year. Borges's duties included supervising staff and overseeing juvenile offenders brought to the facility, among other responsibilities.

2

¶4     Borges was diagnosed in April 2014 with Autism Spectrum Disorder. His condition manifests with an extreme sensitivity to fragrances such as perfumes, colognes, and scented items. When he encounters strong fragrances, he experiences physical pain, headaches, and anxiety, among other symptoms. Borges's sensitivity to fragrances became increasingly severe throughout 2014 and 2015.

¶5     After Borges told his immediate supervisor, Sergeant Gary Evans, of his diagnosis, Evans scheduled a meeting for May 19, 2014, with County human resources personnel Carol Bishop and Patty Baumgart, the human resources director. At the meeting, Borges informed Baumgart and Bishop of his diagnosis and hypersensitivity to fragrances. Baumgart explained that the County wanted to begin a dialogue with Borges about whether his diagnosis had any implications for his work. Baumgart told Borges that the County would explore the possibility of implementing a "fragrance-free" policy at the detention facility. The detention facility had a written policy at the time that stated, "fragrances, if worn, should be moderate."

¶6     After this meeting, Bishop worked with Borges to prepare an Americans with Disabilities Act (ADA) reasonable accommodation request. Borges's clinician completed an ADA Release of Information form on June 6, 2014. The clinician stated on the form, "an accommodation for a fragrance-free environment would be important, given Mr. Borges's sensory sensitivities. Other individualized accommodations may be needed but should be determined based on a discussion with Mr. Borges."

¶7     On June 17, 2014, Baumgart met with Evans and his supervisors, Commander Jason Kowalski and Assistant Commander Barbara Rodrick, to discuss the possibility of

3

implementing a new fragrance policy at the detention facility. Baumgart suggested that the detention facility pursue a "fragrance-free" policy, and Rodrick agreed to research possible language for such a policy. The next day, Rodrick attempted to call Borges but was unable to reach him. She sent Borges an email stating, "If you still want to meet, I am here next week."[1] Borges responded simply with the word "thanks," but did not pursue a meeting with Rodrick.

¶8 In a June 24, 2014 email conversation between Borges and Baumgart, Borges stated, "I need to drop out of this accusative/investigative stage for a while, provided it doesn't grow worse." Borges also stated that he wanted to meet with Baumgart but would be unavailable to do so until September, due to his assignment to night shifts. Baumgart responded, "I will be glad to meet with you at any point that you wish." She also informed Borges that Kowalski and Evans "agreed to look at the fragrance free policy" and that she would "be proposing some version of that same policy for county wide distribution."

¶9 Throughout the summer and into the fall of 2014, Borges informed the County of multiple incidents involving his exposure to harsh fragrances while at work. Borges does not dispute that the County responded to each situation by investigating, by encouraging him to report, and by acting to protect Borges from the offensive smells.

¶10 The County adopted an amended fragrance policy on October 8, 2014. The amended policy stated, "Perfumes or Colognes are not allowed due to client and co-worker

---

[1] Borges argues for the first time on appeal that this email is inadmissible because the County introduced it as an attachment to its Reply brief in support of summary judgment. He did not object to its admission during the summary judgment proceedings. "[W]e generally do not consider issues raised for the first time on appeal." *Draggin' Y Cattle Co., Inc. v. Addink*, 2016 MT 98, ¶ 15, 383 Mont. 243, 371 P.3d 970. We consider this email part of the record on appeal.

4

allergies." Borges had no direct input in the language of this policy. Bishop arranged a meeting for October 22 with Borges and his supervisors to discuss the policy. Borges expressed reluctance to attend the meeting and asked to reschedule. Bishop assured him that the purpose of the meeting was simply "to continue the interactive dialogue about accommodation in your work" and urged him to attend. Borges attended the meeting.

¶11 At the meeting, Borges stated that the "team"—which included his supervisors and human resources personnel—had done an excellent job working with him on the fragrance policy. But he expressed concerns that the County was not adequately enforcing the policy and that the policy itself was inadequate because it banned only perfumes and colognes, as opposed to all fragrances. The County staff encouraged Borges to excuse himself, when possible, from situations in which he encountered offensive smells and to use his supervisory authority to help enforce the policy when he observed non-compliance. Borges asserts that the County refused to reconsider the language of the policy.

¶12 Borges filed a complaint with the HRB on October 31, 2014, claiming that the County discriminated against him by failing to provide a reasonable accommodation, subjected him to a hostile work environment, and retaliated against him by denying him a promotion, in violation of the Montana Human Rights Act ("MHRA" or "Act") and the ADA. The HRB initiated an investigation, which continued until June 2015.

¶13 Due to the increasing severity of Borges's sensitivity to fragrances, the County placed him on paid administrative leave on February 10, 2015. The HRB issued its Final Investigative Report on June 15, 2015. It found no reasonable cause to believe that the County discriminated against Borges.

¶14    Borges resigned his position on July 16, 2015, citing "ongoing medical disability issues." He filed a complaint in the District Court in September 2015, alleging that the County "discriminated and retaliated against him, through a continuing course of conduct when they refused to accommodate his disability throughout the summer and fall of 2014." In response to the County's motion for summary judgment, Borges also claimed that the County had failed to engage in an "interactive dialogue" regarding an individualized accommodation.

¶15    Borges presented evidence to the District Court of the County's alleged ongoing discrimination that arose after he filed his HRB complaint on October 31, 2014. He had not informed the HRB of any of this evidence during its investigation. The District Court granted summary judgment to the County. It limited its consideration to evidence of the County's actions prior to October 31, 2014, reasoning that the MHRA permitted Borges to pursue in District Court only those claims that he had asserted before the HRB. Because Borges had not notified the HRB of the additional facts arising after October 31, 2014, the District Court concluded that the MHRA barred it from considering those facts. The court then concluded that no genuine issue of material fact existed whether the County had failed to engage in an interactive dialogue with Borges, failed to offer him a reasonable accommodation, or retaliated against him. Borges appeals.

**STANDARDS OF REVIEW**

¶16    We review a district court's grant or denial of summary judgment de novo, applying the criteria of M. R. Civ. P. 56. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. Summary judgment may be granted only when there

6

is a complete absence of genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Saucier v. McDonald's Rests. of Mont., Inc.*, 2008 MT 63, ¶ 33, 342 Mont. 29, 179 P.3d 481. In determining whether a genuine issue of material fact exists, we view all evidence in the light most favorable to the non-moving party. *Saucier*, ¶ 33. If the moving party satisfies its burden of showing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. *Valley Bank v. Hughes*, 2006 MT 285, ¶ 14, 334 Mont. 335, 147 P.3d 185. If no genuine issues of material fact exist, a court must determine whether the facts entitle the moving party to judgment as a matter of law. *Saucier*, ¶ 34. We review conclusions of law for correctness. *Valley Bank*, ¶ 15.

## DISCUSSION

¶17    *1. Whether the District Court erred in declining to consider facts that arose after Borges filed his October 31, 2014 HRB complaint.*

¶18    Borges argues that the District Court erred when it declined to consider any facts of the County's alleged discrimination that arose after he filed his HRB complaint. He asserts that the County withheld these facts from the HRB during its investigation and that he became aware of them only during discovery in the District Court proceedings. In his view, these facts pertained directly to his original HRB claim of the County's ongoing discrimination and did not constitute distinct claims requiring separate filings. He argues also that the court should have considered these facts under the "transaction rule" of § 26-1-103, MCA.

7

¶19 The MHRA establishes the "exclusive remedy for acts constituting an alleged" discriminatory practice under the Act's provisions. Section 49-2-512(1), MCA. A claim for relief "may not be entertained by a district court other than by the procedures specified" in the Act. Section 49-2-512(1), MCA. The Act allows a person alleging discrimination to file a complaint with the HRB within 180 days of the alleged unlawful conduct and requires that the complaint state "the particulars of the alleged discriminatory practice." Section 49-2-501, MCA. A party claiming discrimination may not file a claim in district court without first obtaining an adjudication of that claim by the HRB. *See Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶ 35, 358 Mont. 193, 244 P.3d 321; *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 39, 337 Mont. 1, 155 P.3d 1247 (holding that petitioners' "failure to exhaust available administrative remedies" under the MHRA precluded them "from bringing a viable claim in district court"); *Shields v. Helena Sch. Dist. No. 1*, 284 Mont. 138, 149, 943 P.2d 999, 1005 (1997) ("No action may be filed in district court until the procedures of the Montana Human Rights Commission have been exhausted.").

¶20 Once a party files a complaint with the HRB, the HRB "shall informally investigate the matters set out in the complaint promptly and impartially to determine whether there is reasonable cause to believe that the allegations are supported by a preponderance of the evidence." Section 49-2-504(1), MCA. The HRB seeks in its investigation to "gather sufficient information to allow a thorough scrutiny of the circumstances surrounding complaints of discrimination." Admin. R. M. 24.8.212(1). A party filing a complaint with the HRB may "amend a complaint to cure defects or omissions . . . and to allege new facts and matters arising out of continuing violation of law." Admin. R. M. 24.8.752(1).

8

¶21 Borges asserted in his HRB complaint that the County discriminated against him because of his disability, failed to provide a reasonable accommodation, and retaliated against him for engaging in a protected activity. After he filed his District Court complaint, Borges presented the court with the following facts that had arisen after he filed his HRB complaint:

- That he proposed an amendment to the detention facility's fragrance policy stating, "MCDF is a fragrance-free workplace. Fragrances are not permitted on staff, their clothing or their possessions";
- That the County ignored his proposed amendment;
- That the County refused to enforce its own amended fragrance policy;
- That Kowalski suggested in January 2015 that the County equip Borges with a respirator to use at work, but that the County refused to do so;
- That the County did not discuss other potential individualized accommodations with Borges; and
- That the County intentionally withheld Borges's annual performance evaluation due to the pending HRB investigation.

¶22 All of these facts relate to the claims made in Borges's original October 2014 HRB complaint. Borges made no amendments, however, to "allege new facts and matters arising out of" the County's alleged continuing discrimination. Admin. R. M. 24.8.752(1). He had ample time to do so; the new facts arose in the final months of Borges's active employment, between November 2014 and February 2015, and the HRB continued its investigation until June 2015. Because Borges continued in the County's employ after he alleged its failure to provide a reasonable accommodation, it is fair to expect that additional actions would occur that related to his claim. Borges was obligated to supplement his claim with new evidence of "the particulars of the [County's] alleged discriminatory practice,"

9

§ 49-2-501(3), MCA, in order to allow the HRB to consider "new . . . matters arising out of c ontinuing violation of law." Admin. R. M. 24.8.752(1).

¶23  The Act constrains a district court to entertain only those claims that the HRB adjudicates after a thorough investigation. *See* § 49-2-512(1), MCA; *Griffith*, ¶ 35; *Jones*, ¶ 39; *Shields*, 284 Mont. at 149, 943 P.2d at 1005.  Because Borges did not amend his complaint to include new, relevant facts, the HRB's decision was uninformed by those facts.

¶24  Borges asserts that the County withheld the new facts from the HRB investigator, that Borges discovered them only upon conducting discovery in the civil action, and that he raised these facts to the District Court as soon as he became aware of them.  But Borges was aware of many of these facts as they occurred: that the County rejected his proposed amendment to the fragrance policy, that it refused to enforce the fragrance policy in effect, and that the County did not discuss other potential individualized accommodations with him.

¶25  To the extent that Borges's additional facts supported allegations of separate acts of discrimination, the District Court properly declined to consider them.  Borges is correct, though, that neither the MHRA nor Admin. R. M. 24.8.752(1) necessarily forecloses a district court's consideration of evidence that may be relevant to an existing claim of discrimination.  But Borges has not shown how this evidence would have impacted his discrimination claim.  His proposed amendment to the fragrance policy would have banned all fragrances worn by detention facility staff.  Yet Borges frequently encountered disabling fragrances other than those worn by his coworkers, such as on scented items in the

workplace, on the persons and belongings of arrestees and members of the public, and from odors due to repair work at the facility. Borges's proposed policy would not have banned these odors or fragrances. It is unclear how Borges's proposed accommodation would have enabled him to perform his job without limitation, given that it too would not have shielded him from offensive fragrances while at work. That the County rejected his proposed amendment does not raise a material issue of fact in his discrimination claim.

¶26 Borges also fails to show how facts that he presented to the District Court of which he was unaware during the HRB investigation—that the County had refused to consider Kowalski's suggestion of equipping Borges with a respirator and that the County withheld Borges's performance evaluation in alleged retaliation for his HRB complaint[2]—are material to his discrimination claim. Borges never requested a respirator, nor did any healthcare professional suggest that he use one. The fact that one of Borges's supervisors floated an idea for an accommodation that the County did not adopt does not substantiate, without more, that the County failed to offer a reasonable accommodation to Borges.

¶27 Borges asserts that the County's withholding of his annual performance evaluation due to his pending HRB claim was evidence of the County's unlawful retaliation. But retaliation requires that the employer take a "significant adverse act" against the employee, such as "discharge, demotion, denial of promotion, denial of benefits or other material adverse employment action." Admin. R. M. 24.9.603(1), (2). The County's withholding of Borges's performance evaluation did not adversely affect his employment in any

---

[2] Borges changed the basis of his retaliation claim, based on the evidence obtained during discovery in the District Court proceedings, from the County's alleged denial of his promotion to the County's withholding of his annual performance evaluation.

material way. Further, the record shows that the County withheld Borges's performance evaluation out of concern that conducting an evaluation would be seen as retaliation for his HRB complaint. The County's actions did not constitute a "significant adverse act" and therefore were not material to his claim of retaliation. Admin. R. M. 24.9.603(1).

¶28 Borges argues that the District Court should have considered the post-October 2014 facts under the "transaction rule" of § 26-1-103, MCA. That statute provides, "Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA. This provision pertains to the admissibility of evidence and is commonly used to admit evidence of "prior acts" that are linked to a charged offense in criminal cases. *See, e.g., State v. Berosik*, 2009 MT 260, ¶ 45, 352 Mont. 16, 214 P.3d 776; *State v. Gittens*, 2008 MT 55, ¶ 37, 341 Mont. 450, 178 P.3d 91. Borges cites no authority explaining why this provision should override the Act's specific mandate that a District Court may hear only claims that have been adjudicated by the HRB. *See* § 49-2-512(1), MCA; § 1-2-102, MCA ("When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it."). The District Court did not err in declining to consider evidence arising after Borges filed his HRB complaint.

¶29 *2. Whether the District Court erred in concluding that no genuine issue of material fact existed as to the County's alleged failure to engage in an interactive dialogue or to provide a reasonable accommodation.*

¶30 Borges argues that, regardless of the evidence arising after he filed his HRB complaint, the District Court erred in granting summary judgment to the County because

12

he demonstrated a genuine issue of material fact whether the County failed to engage him in an interactive dialogue or to provide him a reasonable accommodation. Borges contends that the court impermissibly made credibility determinations of witnesses, failed to make reasonable inferences in favor of Borges, and improperly resolved disputed issues of material fact.

¶31 "It is an unlawful discriminatory practice" for an employer to "fail to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee." Admin. R. M. 24.9.606(1)(a). "A person with a physical or mental disability is qualified to hold an employment position if the person can perform the essential functions of the job with or without a reasonable accommodation for the person's physical or mental disability." Admin. R. M. 24.9.606(2). Thus, "[i]f a person suffers from a disability, the employer has a duty to provide a reasonable accommodation if, with such accommodation, the person could perform the essential job functions of the position." *Pannoni v. Bd. of Trs.*, 2004 MT 130, ¶ 27, 321 Mont. 311, 90 P.3d 438 (citing § 49-2-101(19)(b), MCA, and Admin. R. M. 24.9.606(2)). "This duty to make reasonable accommodations is an essential part of Montana's anti-discrimination statutes." *McDonald v. Dep't of Envtl. Quality*, 2009 MT 209, ¶ 40, 351 Mont. 243, 214 P.3d 749.

¶32 Reasonable accommodations for an employee with a disability may include, among other things, making work facilities "readily accessible to and usable by" persons with disabilities, "job restructuring," "modified work schedules," "acquisition or modification of equipment or devices," or "appropriate adjustment or modifications of examinations or training materials or policies." Admin. R. M. 24.9.606(3). An accommodation is

13

considered "reasonable" as long as it does not "impose an undue hardship upon the employer," such as causing "significant difficulty or extraordinary cost." Admin. R. M. 24.9.606(4), (5).

¶33 We look to guidance from federal anti-discrimination law under the ADA when construing provisions of the MHRA. *BNSF Ry. Co. v. Feit*, 2012 MT 147, ¶ 8, 365 Mont. 359, 281 P.3d 225. Under the ADA, when an employee notifies the employer of the employee's disability and desire for an accommodation, that notification triggers the employer's obligation to engage in an "interactive process" with the employee to identify potential reasonable accommodations. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), vacated on other grounds by *US Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516 (2002).

> The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees. The shared goal is to identify an accommodation that allows the employee to perform the job effectively. Both sides must communicate directly, exchange essential information, and neither side can delay or obstruct the process.

*Barnett*, 228 F.3d at 1114-15.

¶34 Borges alleged in his HRB complaint that the County failed to provide a "reasonable accommodation" for his disability; he did not allege that it failed to engage in an interactive process or dialogue with him to identify a reasonable accommodation. These two claims are qualitatively different. An interactive dialogue violation may be defined as a failure by the employer to communicate with the employee about potential accommodations, *see Barnett*, 228 F.3d at 1114, whereas a reasonable accommodation violation refers to the employer's ultimate failure to take action that would permit an otherwise-qualified

14

employee to perform his essential job functions, *see* Admin. R. M. 24.9.606(1)(a). Because Borges did not claim in his HRB complaint that the County failed to engage in an interactive process, he was not permitted to raise that claim to the District Court, and we decline to hear it on appeal.[3] *See* § 49-2-512(1), MCA; *Griffith*, ¶ 35; *Jones*, ¶ 39; *Shields*, 284 Mont. at 149, 943 P.2d at 1005.

¶35 As to Borges's claim of a reasonable accommodation violation, the County had "a duty to provide a reasonable accommodation to [Borges] if, with such accommodation, [Borges] could perform the job's essential functions." *McDonald*, ¶ 40. "As long as a reasonable accommodation available to [the County] could have plausibly enabled [Borges] to adequately perform his job," the County was required to "attempt that accommodation." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001) (citation and internal quotations omitted).

¶36 The undisputed facts show that the County made good faith efforts to develop a reasonable accommodation that could enable Borges to perform his job. When the County became aware of Borges's disability in May 2014, Baumgart told Borges that the County wished to engage him in a dialogue about possible accommodations at work. When Borges agreed that a "fragrance-free" policy would be helpful, Baumgart assured Borges that the County would begin to explore this possibility. Bishop worked with Borges to prepare an

---

[3] Borges argues on appeal that the District Court improperly decided a disputed issue of material fact when it interpreted his June 24, 2014 email to Baumgart as communicating that he wanted to "drop out" of the interactive dialogue. Borges asserts that he was referring in that email to an unrelated dispute with a coworker. Because the court considered that email in the context of Borges's interactive dialogue claim, and because Borges was not permitted to raise that claim before the District Court, the court's interpretation of Borges's email is immaterial to this appeal.

15

ADA reasonable accommodation request, and County staff met on June 17, 2014, to discuss potential accommodations for Borges. Baumgart offered to meet with him "at any point" that he wished. She also informed him that she, Evans, and Kowalski were looking into a possible "fragrance-free" policy for the detention facility. Two weeks after the County adopted its amended fragrance policy, County staff held a meeting to discuss the policy with Borges.

¶37 The undisputed facts show also that the County was responsive to Borges whenever he experienced incidents of intense hypersensitivity to smells. When two of Borges's coworkers hid perfume samples around his work station in June 2014, causing Borges to experience headaches and anxiety, Evans investigated the incident, "verbally counseled" those responsible, and reported the incident to Kowalski. Kowalski determined that the coworkers likely had not been aware of Borges's disability and that Evans had properly handled the incident. When Borges complained of odors emanating from welding and repair work at the detention facility in July 2014, Kowalski reversed the air flow in the facility to clear Borges's work area of the odors. When Borges encountered and disposed of a scented mousepad in the detention facility's booking area in September 2014, he reported the incident to Baumgart. Baumgart advised him that he should "feel free to fill out a notice of injury" in order to document the incident. Finally, when Borges complained of encountering offensive fragrances while interacting with a tour group at the detention facility, Kowalski permitted him to leave the area, and Evans took over Borges's duties until the smells dissipated. When Baumgart heard about this incident, she asked Evans to

16

"schedule tours so [Borges] does NOT have to be involved." Evans responded that Borges was not required to participate in the tours.

¶38 The undisputed facts show finally that no reasonable accommodation in the form of a fragrance policy existed that could have enabled Borges to come across members of the public and arrestees—central components of his job—without encountering offensive fragrances. As the County told Borges at the October 22, 2014 meeting, and as Borges implicitly acknowledged by limiting his own proposed fragrance policy to detention facility staff, the County could not have enforced, without "significant difficulty," a policy banning all fragrances worn by arrestees and members of the public. Admin. R. M. 24.9.606(5). Borges does not allege that the County's failure to adopt a more restrictive fragrance policy contributed to his deteriorating medical condition or to his increasing sensitivity to fragrances. The County was required to provide a reasonable accommodation only "if, with such accommodation, [Borges] could perform the essential functions of the position." *Pannoni*, ¶ 27. The record does not establish a genuine issue of material fact whether an accommodation in the form of a fragrance policy different from the one the County adopted would have permitted Borges to perform his essential job duties.

¶39 Because the undisputed material facts show that the County engaged in a good faith effort to develop a reasonable accommodation for Borges, that the County accommodated Borges's needs when he encountered offensive fragrances at work, and that no reasonable fragrance policy could have fully shielded Borges from offensive fragrances in the work place, no genuine issue of material fact exists whether the County adequately attempted to

17

provide a reasonable accommodation. The District Court therefore correctly granted summary judgment to the County. *See Saucier*, ¶ 33.

## CONCLUSION

¶40 The District Court's summary judgment order is affirmed.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE