FILED

11/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0094

DA 23-0094

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 232N

CINDY FUSON,

      Plaintiff and Appellant,

   v.

CHS INC., and DOES 1-5,

      Defendants and Appellees.

APPEAL FROM:   District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DV-18-044
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Torrance L. Coburn, Tipp Coburn & Associates PC, Missoula,
Montana

     For Appellee:

          John G. Crist, Crist, Krogh, Alke & Nord, PLLC, Billings, Montana

Submitted on Briefs:  October 4, 2023

Decided:  November 28, 2023

Filed:

                                             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Cindy Fuson appeals an adverse ruling from the Ninth Judicial District Court, Toole County, on discrimination, wrongful discharge, and implied covenant of good faith and fair dealing claims arising out of her termination from CHS Inc. (CHS).  We affirm.

¶3      Fuson was a driver and gauger for CHS.  A commercial driver's license (CDL) was required for her to carry out her job duties.

¶4      Fuson was placed on worker's compensation following an on-the-job injury in August 2016.  She performed either light-duty tasks or did not work between her date of injury and a subsequent surgery in November 2016.  Her last day of work was November 2, 2016.

¶5      Fuson was hospitalized at Warm Springs State Hospital between November 24, 2016, and December 12, 2016.  She requested and received short-term disability from CHS for mental health issues between December 14, 2016, and June 15, 2017.  CHS mailed paperwork for a long-term disability application to Fuson in April 2017, which she did not immediately return.

¶6     On June 26, 2017, Christopher Rost, PA-C, denied Fuson medical certification for her CDL, stating "[e]xaminer feels she is not suitable at this time to safely operate CMV [commercial motor vehicle].  Close psychiatric follow up is needed."  Global Safety Network, an independent medical review agency that determines whether drivers are medically qualified to drive a commercial vehicle, reviewed Rost's report and sent CHS a letter stating Fuson was "[n]ot qualified due to mental health episodes without follow up."  A CHS supervisor encouraged Fuson to seek a second opinion.

¶7     On July 5, 2017, Fuson received a letter from CHS notifying her that it had not received her long-term disability application and that it was placing her on a "temporary unpaid leave of absence which [would] end no later than July 17, 2017."  CHS advised Fuson that she was not medically qualified to drive, and that it was "imperative that outstanding employment related items be resolved no later than July 17, 2017," otherwise it would "re-evaluate [her] on-going status as an employee of CHS."

¶8     Fuson submitted paperwork for long-term disability on July 17, 2017, through MetLife, which serviced long-term disability claims for CHS.  On July 18, 2017, Fuson emailed her supervisor, stating that she "got a DOT physical," and asking for contact information for the medical review officer.  In response, Fuson's supervisor asked her to send the DOT physical report to her, which she would pass along to the medical review officer.  Fuson never sent the report to her supervisor.

¶9     Fuson renewed her Montana CDL on September 12, 2017, and notified her supervisors at CHS.  However, MetLife advised both Fuson and CHS that her claim for long-term disability was denied.  CHS had not received the DOT physical report from

3

Fuson, although Fuson did notify her supervisors that she had renewed her CDL. CHS terminated Fuson's employment on October 3, 2017, never having received the DOT physical report nor approval from a medical review officer.

¶10 On February 6, 2018, Fuson filed disability and gender discrimination claims before the Montana Human Rights Bureau (MHRB), alleging:

> Fuson notified the company that she was able to return to work, had a valid CDL and was cleared by a DOT-approved physical. . . . Despite this, CHS erroneously determined that Fuson did not have a valid CDL and made this the basis for determination. . . . CHS illegally terminated Fuson because it perceived Fuson as disabled and used a false reason to terminate her.

¶11 The only allegations relating to Fuson's gender discrimination claim stated "Fuson was the only female driver in the area," and "Fuson was subject to a hostile work environment wherein a male supervisor treated her disparately than other male drivers." Fuson admitted these incidents occurred before her last day of actual work on November 2, 2016.

¶12 The MHRB denied both claims, and Fuson filed her lawsuit in the District Court on September 28, 2018, alleging claims for breach of implied covenant of good faith and fair dealing, wrongful discharge, and gender and disability discrimination. On January 6, 2023, the District Court awarded CHS summary judgment on each claim.

¶13 Fuson argues the District Court erred in dismissing her claims. She contends she had medical certification to lawfully operate a commercial vehicle, which was the dispositive element of her disability discrimination claim. Then, she argues her wrongful discharge and implied covenant of good faith and fair dealing claims were factually distinguishable from her discrimination allegations and thus not barred by the Montana

4

Human Rights Act (MHRA). Finally, she argues her gender discrimination claim was not time-barred.

¶14 The District Court correctly held Fuson was unqualified, as a matter of law, for continued employment with CHS and that she was therefore unable to raise a disability discrimination claim.

¶15 Under § 49-2-303(1)(a), MCA, it is unlawful for an employer to refuse employment to an individual because of a physical disability. To properly raise a disability discrimination claim under the MHRA, an employee "must show: (1) she belonged to a protected class; (2) she was otherwise qualified for continued employment . . . and (3) [she was denied] continued employment because of her disability." *Reeves v. Dairy Queen*, 1998 MT 13, ¶ 21, 287 Mont. 196, 953 P.2d 703. Federal law requires individuals to be medically certified to operate commercial vehicles. 49 C.F.R. § 391.41(a)(1)(i). Further, an individual is not medically qualified until the Federal Motor Carrier Safety Administration (FMCSA) has made a determination regarding her application. 49 C.F.R. § 391.47(f). Barring an FMCSA determination granting medical certification, an employee is unqualified as a matter of law for continued employment in a role that requires operating a commercial vehicle.

¶16 CHS did not possess evidence that Fuson was qualified by the FMCSA for continued employment. Although Fuson purports to have completed a DOT physical and obtained a Montana CDL, she never provided CHS with documentation indicating she was medically certified under the federal law, and it was not CHS's burden to request it. *See, e.g.*, *Alexander v. Mont. Dev. Ctr.*, 2018 MT 271, ¶ 12, 393 Mont. 272, 430 P.3d 90

(employer obligations triggered once employee requests accommodations). Fuson did not demonstrate that she was "otherwise qualified for continued employment" because there was no record evidence showing her FMCSA medical certification. Accordingly, Fuson's disability discrimination claim failed as a matter of law.

¶17 Further, the District Court correctly ruled there was no remedy available to Fuson outside the MHRA for her wrongful discharge and implied covenant of good faith and fair dealing allegations because they are factually indistinguishable from her discrimination claims.

¶18 The MHRA is the "exclusive remedy" for unlawful discriminatory conduct under Title 49, chapters 2 and 3, MCA. When the "gravamen" of a claim is discrimination, common law tort claims arising from indistinguishable facts are barred by the exclusive remedy provision of the MHRA. *Harrison v. Chance*, 244 Mont. 215, 223, 797 P.2d 200, 205 (1990).

¶19 As the basis for her common law claims here, Fuson asserts CHS's reasons for terminating her were pretextual. Fuson alleges she "held both a valid CDL and medical card," but she was nevertheless terminated without being offered work. Like the District Court below, we find these facts indistinguishable from those that supported her MHRB complaint. The MHRB complaint alleged "Fuson notified the company that she was able to return to work, had a valid CDL and was cleared by a DOT-approved physical. . . . Despite this, CHS erroneously determined that Fuson did not have a valid CDL and made this the basis for determination." The gravamen of Fuson's common law claims here is discrimination, as it was before the MHRB. Fuson sought recourse for her

6

grievances through the MHRB and was denied. The District Court correctly denied her the opportunity to circumvent the exclusivity provisions of the MHRA by simply rebranding her claims.

¶20 Finally, the District Court correctly held that Fuson's gender discrimination claim was time-barred.

¶21 A discrimination complaint is time-barred under the MHRA unless it is filed "within 180 days after the alleged unlawful discriminatory practice occurred or was discovered." Section 49-2-501(4)(a), MCA. Because the MHRA is the "exclusive remedy" for discrimination claims, the district court may only consider factual claims that were raised and adjudicated by the MHRB. *Borges v. Missoula Cnty. Sheriff's Office*, 2018 MT 14, ¶ 19, 390 Mont. 161, 415 P.3d 976 (citation omitted).

¶22 In her February 16, 2018 MHRB complaint, Fuson alleged disparate treatment by CHS due to her gender. At her deposition, Fuson conceded, however, that none of the alleged disparate treatment occurred after November 2, 2016, her last day of actual work. Fuson now argues that even though more than a year and a half elapsed between the alleged disparate treatment and the date she filed the MHRA complaint, the 180-day time limit should have been based on the termination date, because her gender was a reason for the termination. The District Court correctly determined the time period had expired. Moreover, the District Court noted that Fuson never raised that claim before the MHRB. She simply alleged: "Fuson was the only female driver in the area," and she was "subject to a hostile work environment wherein a male supervisor treated her disparately than other male drivers." Fuson's claim that gender was a factor in her termination was not raised

before the MHRB, thus the District Court was correct to conclude it could not consider the claim. *Borges*, ¶ 19.

¶23    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶24    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR