Justice Dirk M. Sandefur delivered the Opinion of the Court.
*512 ***457 ¶1 Plaintiffs Audrey O'Keefe and Tim Beardsley appeal the judgment of the Montana Fifth Judicial District Court, Madison County, granting Defendants Mustang Ranches Association, et al., summary judgment that the pertinent deeds of conveyance and referenced subdivision plat established a 60' wide roadway easement straddling the boundary of Plaintiffs' adjoining lots to the benefit of the other platted subdivision lots for ingress and egress to and from the subdivision and adjoining off-plat land. Plaintiffs also appeal the court's subsequent grant of summary judgment denying their damages claims in trespass and for property damage resulting from a self-help removal and destruction of the gate(s) placed across the roadway by Plaintiffs to limit access to the adjoining land to themselves and their guests. We affirm.
¶2 We address the following restated issues on appeal:
1. Whether the District Court erroneously concluded that Elk Valley Road burdened Lots 70 and 71 to the benefit of other subdivision lot owners for ingress and egress to and from the adjoining off-plat land?
2. Whether the District Court erroneously concluded that Plaintiffs had no right to obstruct Elk Valley Road and thus no right to compensatory damages in trespass and for removal of the obstruction?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Mustang Ranches Subdivision (Mustang Ranches) is a rural residential subdivision in Section 29, Township 6, Range 1 East, Madison County, Montana. The former ranch property includes 86 twenty-acre lots with platted roadways and common areas. Shining Mountains North, a limited partnership, was the subdivider and most recent common owner of the property. Shining Mountains North subdivided the property in 1973 by filing an unreviewed subdivision plat prior to the effective date of the 1973 Montana Subdivision and ***458 Platting Act (Title 76, chapter 3, MCA).[1] The Lee Metcalf Wilderness (hereinafter "USFS land"[2] ) borders on the eastern perimeter of the subdivision along the eastern boundaries of Lots 41-45, 54, 55, 70, 71, and 86. The Mustang Ranches plat does not identify, describe, or depict the adjoining USFS land.
¶4 Upon filing of the subdivision plat, Shining Mountains North filed a separate written declaration of protective covenants reciprocally burdening and benefitting the subdivision lands. In pertinent part, the covenants limited use of subdivision lands to "residential purposes only" and charged the Mustang Ranches Association (Association), a Montana non-profit corporation, with oversight and maintenance "of all common areas," including "grading and maintenance of the major traverse roads," and maintenance of "the existing ranch fencing around the perimeter of the property. ..."[3] Pursuant to the covenants *513 and unrecorded Association bylaws, the Association membership includes ***459 all record owners of subdivision lots who are current on their membership dues. Though the non-record rules and regulations of the Association reference the adjoining USFS land, the recorded Mustang Ranches covenants do not.
¶5 The Mustang Ranches plat clearly depicts and labels a connected network of 60' wide roadways within the subdivision. Every subdivision lot borders on at least one of the platted roadways. The platted roadway network thus provides multiple points of ingress and egress to and from the subdivision and adjoining exterior lands at various points around the perimeter of the subdivision. Subdivision lots currently access the public road system by direct or indirect connection to a county road from the west terminus of the platted Airport Road running along the southern boundary of the subdivision to its southwest corner (southwest corner of Lot 8).
¶6 Four of the platted interior roadways (McDeed Creek Road, Elk Valley Road, Shell Creek Road, and Cedar Mountain Road) run east to west with eastern termini on the eastern boundary of the subdivision and adjoining USFS land. The mid-line of the Elk Valley Road runs along the southern boundaries of Lots 71-78 and the adjoining northern boundaries of Lots 63-70. The road thus runs over a 30' strip of land within each of those lots.[4] Any ingress or egress to or from the subdivision and adjoining USFS land via Elk Valley Road must necessarily pass over one or both of the 30' wide strips within and along the adjoining boundary between Lots 70 and 71. See Figures 1-2. Like other interior subdivision roadways, Elk Valley Road currently remains unimproved-essentially two wheel tracks across a barren field.
Figure 1 - Mustang Ranches Subdivision *514 Figure 2 - Platted Elk Valley Road
¶7 By 1985 warranty deed (recorded 1987), Shining Mountains North conveyed Lot 71 to Bob and Audrey Chamberlin by reference to the previously filed Mustang Ranches plat but "[s]ubject to easements and restrictive covenants and reservations of record. ..." In 2012, Plaintiff Audrey O'Keefe (formerly Audrey Chamberlin), acquired sole title to Lot 71 from Bob Chamberlin via a recorded quitclaim deed that conveyed the lot by reference to the Mustang Ranches plat "together with all tenements" and "appurtenances."
***460 ¶8 By 1982 warranty deed (recorded 1992), Shining Mountains North conveyed Lot 70 to Ronald Lerch by reference to the previously filed Mustang Ranches plat but "[s]ubject to easements and restrictive covenants and reservations of record. ..." Following mesne conveyances by recorded deeds from Lerch to Lennis and Connie Williams (1992) and then from Connie to Lennis (1999), Plaintiff Tim Beardsley acquired Lot 70 in 2002 by recorded warranty deed from Lennis Williams. The 1992, 1999, and 2002 deeds all conveyed Lot 70 by reference to the previously filed Mustang Ranches plat.
¶9 Beardsley and his guests have used Lot 70, via Elk Valley Road, for seasonal access to and from the adjoining USFS land for recreational purposes, primarily elk hunting. There is no record evidence of any other use of Lot 70 or 71 by the current or prior owners of those lots. Like Elk Valley Road, Lots 70 and 71 remain unimproved lots platted over a barren field.
¶10 For some time after the 1973 subdivision of the former ranch land, a preexisting stock fence continued to exist along the eastern perimeter of the subdivision and adjoining USFS land. There is no evidence that the stock fence had any purpose other than to control ranging ranch stock. The record indicates that the stock fence was gone, down, or otherwise open at the east end of the Elk Valley roadway before the dispute arose in this case.
¶11 Sometime prior to 2015, Beardsley became aggrieved with other Mustang Ranches landowners "trespassing" over his land on the platted Elk Valley Road to access the adjoining USFS land for elk hunting or other seasonal recreational purposes. According to Beardsley, the perceived trespassers would occasionally drive down and park their vehicles on Elk Valley Road either as a vantage point for spotting elk coming down from the mountains on the adjoining USFS land or as a point of entry thereto. With O'Keefe's "knowledge and consent," Beardsley placed a cable gate (a cable hung between two wooden posts) across the platted Elk Valley Road where it crosses the western boundaries of Lots 70 and 71, along with approximately 100 feet of fencing running north and south from each end of the gate along the western boundary of each lot, thereby blocking access on the road over those lots from the interior of the subdivision to and from the eastern terminus of the road and adjacent USFS land. The gate remained undisturbed and unchallenged for several years until taken down by persons unknown. Within months, Beardsley installed another gate to again similarly block access over the eastern end of Elk Valley Road.
¶12 Another onsite incident occurred at some point in 2013 or 2014 ***461 when a Mustang Ranches lot owner, who was also an Association *515 officer, passed through the gate when left open by one of Beardsley's friends who had left his vehicle unattended on the road. While Beardsley's friend was away on the adjoining USFS land, the Mustang Ranches landowner immobilized the unoccupied truck by removing one of its wheels and then left. Following a criminal prosecution of the landowner, the roadway dispute later flared up again when two Mustang Ranches lot owners, who were also Association officers, took a backhoe down the east end of Elk Valley Road and dug up Beardsley's cable gate posts, leaving the posts and cable on the ground.
¶13 On April 20, 2015, Beardsley and O'Keefe responded by filing a complaint in the Montana Fifth Judicial District Court for declaratory and injunctive relief. The plaintiffs asserted that the east end of Elk Valley Road, from the western boundary lines of Lots 70 and 71 to the east terminus of the road on the eastern boundary of the subdivision, benefitted only those lots to the exclusion of the other Mustang Ranches lots. Plaintiffs further sought compensatory and punitive damages based on trespass and asserted property damage to Beardsley's cable gate and fencing. In 2017, following hearing on the parties' cross motions, the District Court granted the Association, et al., summary judgment that the Mustang Ranches Plat and pertinent conveyances of subdivision lots by the common owner created a roadway easement over the disputed segment of Elk Valley Road to the benefit of the other Mustang Ranches lots for ingress and egress to and from the adjoining off-plat land. In 2018, the Court further granted summary judgment to the Association, et al., on Plaintiffs' damages claims based on its earlier ruling and resulting conclusion that Plaintiffs thus had no right to compensation for property damage to a wrongfully placed gate removed from the road easement way by easement holders. Upon entry of final judgment encompassing the District Court's summary judgment rulings, Plaintiffs timely appealed.
STANDARD OF REVIEW
¶14 We review district court grants or denials of summary judgment de novo for conformance to M. R. Civ. P. 56. Alexander v. Mont. Developmental Ctr. , 2018 MT 271, ¶ 10, 393 Mont. 272, 430 P.3d 90 (citing Borges v. Missoula Cty. Sheriff's Office , 2018 MT 14, ¶ 16, 390 Mont. 161, 415 P.3d 976 ). A court may grant summary judgment only upon a sufficient record showing that no genuine issue of material fact remains and a party "is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). We review district court conclusions and applications of law de novo for correctness. Alexander , ¶ 10 (citing ***462 Borges , ¶ 16 ).
DISCUSSION
¶15 1. Whether the District Court erroneously concluded that Elk Valley Road burdened Lots 70 and 71 to the benefit of other subdivision lot owners for ingress and egress to and from the adjoining off-plat land?
¶16 An affirmative easement is a nonpossessory interest in land authorizing one to use the property of another for a particular purpose. Blazer v. Wall , 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84.[5] Easements arise by express grant or reservation in a written instrument of conveyance, written declaration of covenant,[6] operation of law (implication from necessity or prior use), or prescription. Blazer , ¶ 26 ; Restatement (Third) of Property (Servitudes) § 2.1 (2000).[7] See also §§ 70-21-201(1), -301, -302, MCA (public recording of real property instruments, definition of "conveyance," and effect of recording). Easements are either "appurtenant" or "in gross." Blazer , ¶ 24. See also §§ 70-17-101, -102, MCA. Appurtenant easements benefit a particular parcel of land to *516 the burden of another and perpetually run with title to both. Blazer , ¶ 24.[8] See also §§ 70-15-101(3), -105, 70-17-10l, MCA. Appurtenant easements must have a servient estate and a dominant estate. Blazer , ¶ 24. See also § 70-17-103, MCA. Except as otherwise provided by the originating instrument of conveyance or covenant, an easement created by express grant or reservation is presumed appurtenant to the servient and dominant estates. Broadwater Dev., L.L.C. v. Nelson , 2009 MT 317, ¶ 34, 352 Mont. 401, 219 P.3d 492.
¶17 Express easements must satisfy certain title, severance, and substantive requirements. First, a grantor must have title to both the ***463 intended dominant and servient estates. See §§ 70-1-519, 70-17-104, MCA ("transfer vests in the transferee ... the actual title" held by the transferor in "the thing transferred" and "servitude can be created only by one" with "a vested estate in the servient tenement"). Second, an express easement by grant or reservation arises only upon severance of the intended dominant and servient estates from common ownership. Ruana v. Grigonis , 275 Mont. 441, 448-51, 913 P.2d 1247, 1252-54 (1996) ; Restatement (Third) of Property (Servitudes) § 2.1 cmt. c (2000). See also §§ 70-17-105, -111(1)(a), MCA ("owner of the servient tenement" cannot hold "servitude thereon"-extinguishment of servitude upon vesting of title to servient and dominant estates in same owner); Broadwater Dev. , ¶ 36 (effect of merger of title); Mularoni v. Bing , 2001 MT 215, ¶ 29, 306 Mont. 405, 34 P.3d 497 (merger of title).[9] Third, an express easement must arise from a written instrument of conveyance that is substantively sufficient to convey the severed estate, grant or reserve the intended easement, identify the dominant and servient estates, and indicate the nature and scope of the right reciprocally burdening and benefitting the servient and dominant estates. Walker v. Phillips , 2018 MT 237, ¶¶ 14-18, 393 Mont. 46, 427 P.3d 92 ; Yorlum Props. Ltd. v. Lincoln Cty. , 2013 MT 298, ¶¶ 14-27, 372 Mont. 159, 311 P.3d 748 ; Davis , ¶¶ 19-34.
¶18 A transfer of fee title or creation of lesser non-possessory easement or servitude by grant or reservation must generally occur in a signed writing identifying the grantor and grantee and which further includes language sufficient to both describe the fee or lesser interest conveyed or reserved and effect the conveyance. See §§ 70-1-501, -502, -507, -519, 70-20-101, -103, MCA. A conveyance of real property by reference to a record subdivision plat, certificate of survey (COS), or attached map incorporates the plat, certificate, or map into the instrument as if set forth therein in its entirety. Section 76-3-304, MCA (reference to statutorily compliant subdivision plats);
***464 Kosel v. Stone , 146 Mont. 218, 222, 404 P.2d 894, 896-97 (1965) (reference to pre-1973 statutory subdivision plat); City of Billings v. Pierce Packing Co. , 117 Mont. 255, 261, 161 P.2d 636, 638 (1945) (reference to common law subdivision plat); Restatement (Third) of Property (Servitudes) § 2.13 cmt. a (2000) (reference to plat or map). Consequently, to create an easement by express grant or reservation, an instrument of conveyance and any referenced subdivision plat, certificate of survey, or map of record must be sufficient together to express clear and unambiguous grantor intent to grant or reserve an easement[10] in a manner that clearly and unambiguously *517 describes or otherwise manifests with reasonable certainty the intended dominant and servient estates, use, and location[11] of the easement. Walker , ¶¶ 14-18 (deed language, referenced COS, and subsequently filed corrected COS not signed by grantor sufficiently manifested grantor intent, easement elements, and compliance with statute of frauds); Yorlum , ¶¶ 14-27 (amended subdivision plat and deed reference to original subdivision plat sufficient to create express easement despite lack of precise location description); Davis , ¶¶ 19-34 (deed and referenced COS and declaration of covenants sufficient together to manifest intent to reserve easement and indicate the purpose/burden, on-survey servient estates, and on and off-survey dominant estates); Blazer , ¶¶ 26-76 (deed and referenced COS insufficient to clearly and unambiguously indicate either an intended off-survey or on-survey dominant estate); Pearson v. Virginia City Ranches Ass'n , 2000 MT 12, ¶¶ 18-26, 298 Mont. 52, 993 P.2d 688 (conveyance of lots by reference to subdivision plat sufficient to reserve a depicted bridle path easement burdening ***465 affected lots to benefit of all other subdivision lots); Kelly v. Wallace , 1998 MT 307, ¶ 51, 292 Mont. 129, 972 P.2d 1117 (deed language conveying property "subject to existing [60' wide] easements ... as depicted on" attached "plat"[12] insufficient to create apparently intended easement due to failure to clearly express intent to reserve an easement and adequately indicate intended dominant estate); Tungsten Holdings, Inc. v. Parker , 282 Mont. 387, 390, 938 P.2d 641, 642-43 (1997) (deed and reference plat depicting 40' wide meandering strip labeled "[L]ot 34" insufficient to expressly reserve roadway easement due to ambiguity as to whether subdivider intended a roadway or irregular lot); Ruana , 275 Mont. at 448-51, 913 P.2d at 1252-54 (deed and referenced COS insufficient to clearly express intended easement elements); Bache v. Owens , 267 Mont. 279, 285-86, 883 P.2d 817, 821-22 (1994) (deed and referenced COS sufficient to reserve depicted roadway easement over severed tract to benefit of retained tract); Halverson v. Turner , 268 Mont. 168, 172-74, 885 P.2d 1285, 1288-89 (1994) (deed and reference to COS sufficient to reserve depicted roadway easement over severed tract); Benson v. Pyfer , 240 Mont. 175, 178-80, 783 P.2d 923, 925-26 (1989) (conveyances of lots by reference to subdivision plat burdens affected lots with sufficiently described/depicted easement to common benefit of other subdivision lots); Majers v. Shining Mountains , 219 Mont. 366, 369-71, 711 P.2d 1375, 1377-78 (1986) (conveyance of lots by reference to subdivision plat substantively sufficient to reserve easements for depicted streets, parks, and other open areas over affected lots to benefit of all other subdivision lots); Kuhlman v. Rivera , 216 Mont. 353, 359, 701 P.2d 982, 985 (1985) (unilateral grant of easement across existing roadway sufficient to create easement despite lack of consideration from grantee). See also §§ 70-1-501, -502, -507, 70-17-103 through -106, 70-20-101, -103, -201(6), MCA ; Restatement (Third) of Property (Servitudes) § 2.7 cmt. f (2000). Only in this manner can the instruments of conveyance provide the requisite record notice to property owners and buyers of the *518 dominant and servient estates and the benefit and burden respectively appurtenant thereto. See ***466 Walker , ¶¶ 17-18 ; Blazer , ¶¶ 51, 54. See also §§ 70-21-201(1), -301, -302, MCA (purpose and effect of recording instruments of conveyance).
¶19 While the qualifying deed language "subject to" is generally insufficient alone to create an easement by grant or reservation, Wild River , 248 Mont. at 400-02, 812 P.2d at 346-47, the deeds that severed Lots 70 and 71 from common ownership in this case expressly conveyed them by reference to the previously filed Mustang Ranches Plat "[s]ubject to easements and ... reservations of record. ..." (Emphasis added.) Compare Wild River , 248 Mont. at 400-02, 812 P.2d at 346-47 (conveyance "subject to ... easement ... shown" on referenced COS without indicia of intent to reserve an easement). Taken together in order as a whole, the qualifying deed language in this case refers to the previously filed plat as earlier referenced in the deeds. However, even with the additional qualifying language of "reservation" not present in the Wild River deed, the original conveyances severing Lots 70 and 71 from common ownership and the referenced Mustang Ranches plat were sufficient to newly reserve the disputed easement over those lots only to the extent that the referenced plat clearly and unambiguously indicates the intended servient and dominant estates, use, and location of the new easement. See Restatement (Third) of Property (Servitudes) § 2.2 cmt. d (2000). Accord Walker , ¶ 13 ("coupled with" a plat, COS, or map of record incorporated by reference, the qualifying deed language "subject to" may be together sufficient to newly create an express easement by grant or reservation). See also Yorlum , ¶¶ 15-17 ; Bache , 267 Mont. at 286, 883 P.2d at 821.
¶20 The Mustang Ranches plat clearly subdivided a contiguous parcel of commonly owned land into smaller lots and a connected network of clearly-labeled subdivision roadways. A parcel of land may be reciprocally servient and dominant to other parcels of land formerly under common ownership. See Restatement (Third) of Property (Servitudes) §§ 1.7, 2.1 cmt. c, 2.14 (2000) (general plan developments); see also Hudson v. Irwin , 2018 MT 8, ¶¶ 18-20, 390 Mont. 138, 408 P.3d 1283 (discussing general plan developments). Here, neither the Mustang Ranches plat, nor any other instrument of conveyance, COS, or map of record, depicts or describes any off-plat parcel either owned by the common grantor or previously burdening the subdivided land. Thus, as a matter of law, the common grantor could not have previously granted or reserved an easement over any of the Mustang Ranches lots to the benefit of other commonly owned land, whether on-plat or off. See §§ 70-17-105, -111(1)(a), MCA ; Broadwater Dev. , ¶ 36 ; Mularoni , ¶ 29. Under these circumstances, the severance of Mustang ***467 Ranches lots from common ownership by conveyance with qualifying deed language of "reservation" and by reference to the previously filed Mustang Ranches plat manifests clear and unequivocal intent of the common owner and grantor to create a common plan subdivision wherein every lot touched by the depicted network of connected subdivision roadways would be burdened by the roadways to the common benefit of all other subdivision lots. In turn, the deeds and referenced plat similarly manifest clear and unambiguous grantor intent to reciprocally benefit each so-burdened lot to the similar burden of other subdivision lots touched by the connected roadway network. The connected roadway network, with multiple roadway termini around the perimeter of the subdivision, clearly and unambiguously manifests the intended purpose and use of the depicted roads-to create and allow multiple points of ingress and egress to and from subdivisions lots and adjoining exterior lands over which rights of way or entry may independently have existed at the time or thereafter.
¶21 The Mustang Ranches plat clearly labels, depicts, and describes by dimension the Elk Valley Road as a "60' Road Easement" traversing over and through Lots 70 and 71 along their adjoining boundary from the interior of the subdivision to its eastern perimeter. The 1982 and 1985 deeds that severed Lots 70 and 71 from common ownership by reference to the previously filed Mustang Ranches plat, "[s]ubject to easements and ... reservations of record," thus clearly and *519 unambiguously manifest the common grantor's intent to have the portion of Elk Valley Road traversing Lots 70 and 71 burden those lots to the common benefit of the other subdivision lots, with Lots 70 and 71 to reciprocally benefit from the balance of the connected subdivision roadway network to the burden of the other lots affected thereby. (Emphasis added.)
¶22 By analogy to Blazer , Plaintiffs assert that the severing conveyances and referenced Mustang Ranches plat at most manifest the common grantor's intent to create an easement over the disputed segment of the platted Elk Valley Road to the exclusive benefit of Lots 70 and 71. We disagree. Blazer involved a seven-tract division of land straddling a state highway (Whitefish Stage Road) between Whitefish and Kalispell in Flathead County. Blazer , ¶ 2. In 1979, the common owners (Davis and McCready) filed a COS subdividing a parcel of land bisected by the highway into seven smaller tracts-two adjoining tracts (Tract 1 and 4) on the west side of the highway and the other five on the east side of the highway. Blazer , ¶¶ 2-4. Each of the five eastside tracts bordered either the highway or an intersecting county road to the north. Blazer , ¶¶ 3-5. The two westside tracts adjoined along their ***468 respective southern and northern boundaries, with their eastern boundaries running along the west side of the highway. Blazer , ¶¶ 3-5.
¶23 The originating 1979 COS clearly depicted a strip of land, labeled "30' Easement Road," running east to west over Tract 1 inside its northern boundary between its western boundary and the highway. Blazer , ¶¶ 3-5. At the northwest corner of Tract 1, the depicted roadway turned and ran south inside the west boundaries of the adjoining Tracts 1 and 4 where it terminated at adjoining off-survey land to the south. Blazer , ¶¶ 3-5. The COS did not identify or depict the off-survey lands to the north and west of Tract 1 and to the south and west of Tract 4. After filing the COS, one of the common owners (Davis) "assumed ownership" of the two tracts (Tracts 1 and 4) on the west side of the highway and the other (McCready) "assumed ownership" of the other five tracts (Tracts 2, 3, and 5-7) on the east side of the highway. Blazer , ¶¶ 2-5. Davis thereafter used the depicted roadway over Tracts 1 and 4 as a farm road between the highway and other off-survey lands that "he owned to the south and west of Tract 4." Blazer , ¶ 5.
¶24 In 1987, by reference to the 1979 COS, Davis conveyed Tract 1 to the Lockmans, "SUBJECT TO [a] 30 foot road easement as shown on" the COS. Blazer , ¶ 6. Through a series of conveyances starting in 1999, the Sugar Shack Land Trust ultimately acquired Tract 1 to the benefit of the Waldhers. Blazer , ¶ 7.
¶25 In 1989, by reference to the 1979 COS, Davis sold Tract 4 to the Fosters who later subdivided it into an eastern tract and a western tract. Blazer , ¶ 8. The Fosters then sold the new western sub-tract of Tract 4 to Blazer. Blazer , ¶ 8. Later in 1989, Blazer acquired the lands to the south and west of Tract 4 from Davis, thus giving Blazer ownership of the western sub-tract of Tract 4 and the adjoining off-survey lands to the south and west. Blazer , ¶ 9.
¶26 In 2003, Blazer sued the Tract 1 owner and interested parties for declaratory and injunctive relief based on his asserted claim of right to use the easement depicted over Tract 1 in the 1979 COS. Blazer , ¶¶ 11-12. Blazer asserted that the easement benefitted both Tract 4 and his adjoining off-survey properties to the south and west. Blazer , ¶¶ 11-13. Reversing a subsequent judgment in favor of Blazer, we held that the 1979 COS and 1987 Davis-Lockman deed that severed Tract 1 from common ownership with the retained Tract 4 and Davis's adjoining off-survey lands were insufficient to clearly and unambiguously express his intent to reserve the depicted easement over Tract 1, whether for the benefit of Tract 4 or Davis' adjoining off-survey lands. Blazer , ¶¶ 46-77. As a preliminary matter, we held that the qualifying ***469 language "subject to" in the 1987 Davis-Lockman deed was insufficient alone to create an easement. Blazer ¶¶ 28-29. As to Davis's retained off-survey lands, we further held that the deed and referenced COS were insufficient together to reserve the depicted easement benefitting the off-survey lands because nothing in the COS clearly described or depicted those lands with reasonable certainty *520 as an intended dominant estate over Tract 1. Blazer , ¶¶ 46-54. As to on-survey Tract 4, we held that 1987 deed and referenced 1979 COS were even insufficient to reserve the depicted easement over Tract 1 to the benefit of on-survey Tract 4 due to ambiguity on the face of the COS as to whether Davis intended to reserve the depicted easement for the benefit of the original Tract 4 (which already bordered the highway) or the other five tracts created by the COS on the other side of the highway. See Blazer , ¶¶ 56-77.[13]
¶27 Blazer is only superficially analogous here. Granted, as in Blazer , the parties here are disputing whether the conveyances severing Lots 70 and 71 from common ownership by reference to a record plat depicting a roadway easement over those lots were sufficient to burden them to the benefit of the other subdivision lots, thereby allowing the owners of other subdivision lots to access adjoining but unidentified off-plat land. However, unlike in Blazer , the Defendants here are not asserting that the pertinent deeds and referenced Mustang Ranches plat created an easement over Lots 70 and 71 to the benefit of (i.e., running with title to) the adjoining off-plat land. Unlike in Blazer , the Defendants here are asserting that the pertinent deeds and referenced subdivision plat were sufficient to create an easement over Lots 70 and 71 to the benefit of (i.e., running with title to) the other subdivision lots-not unidentified off-plat land.
¶28 As to the on-plat lands at issue here, Blazer is similarly analogous only to the superficial extent that the on-plat issue in Blazer was whether the pertinent deed and referenced COS were sufficient to reserve a depicted easement over one on-survey tract (Tract 1) to the benefit of another on-survey tract (Tract 4). However, the qualifying ***470 deed language in Blazer ("subject to" the COS-depicted "easement") did not include the additional qualifying deed language of "reservation" present here. Blazer 's Tract 4 holding further uniquely turned on an ambiguity on the face of the COS as to which of the on-survey tracts the grantor intended the depicted easement to benefit-the retained adjoining tract over which the depicted easement also traversed on the west side of the highway or the five tracts then in common ownership on the other side of the highway. No similar circumstance and resulting ambiguity exists here-the Mustang Ranches subdivision is wholly contained within a contiguous larger parcel without similar bisection, includes a platted network of connected roadways, and none of the subdivision lots at issue have independent adjoining access to an identified, previously existing public roadway as in Blazer . Blazer is thus legally and factually distinguishable in all material regards.
¶29 The terms of the originating instruments of conveyance determine the permissible scope of use of express easements. Section 70-17-106, MCA ; Woods v. Shannon , 2015 MT 76, ¶ 12, 378 Mont. 365, 344 P.3d 413. If the originating conveyance grants or reserves an easement in only general terms, without restriction, the permissible scope of use includes any purpose reasonably related to the general purpose expressed. Woods , ¶ 12 ; Clark v. Pennock , 2010 MT 192, ¶ 25, 357 Mont. 338, 239 P.3d 922. If the general grant or reservation is vague or ambiguous, a court may resort to pertinent extrinsic evidence such as the nature and character of the dominant and servient estates, the prior and subsequent use of the properties, the character of the surrounding area, the nature and character of any common plan of development for the area, and the consideration, if any, paid for the easement. Woods , ¶ 12 ; Restatement (Third) of Property (Servitudes) § 4.1 cmt. d (2000). However, if the originating conveyance expressed the intended purpose or use of the easement in specific terms, such *521 as for ingress/egress, access, or roadway purposes, the permissible scope of use must be determined from the specified terms without resort to extrinsic evidence. Woods , ¶ 14. See also Clark , ¶ 27. Except as otherwise limited by the terms of the instruments of conveyance, individuals entitled to use an express easement include the dominant estate owner, family, tenants, and other expressly or implicitly authorized invitees. Woods , ¶ 15 ; City of Missoula v. Mix , 123 Mont. 365, 374, 214 P.2d 212, 217 (1950).
¶30 Here, even if the disputed roadway segment benefits the other lot owners, Plaintiffs assert that the disputed use of the roadway nonetheless unreasonably increases the originally contemplated ***471 burden on the servient estates. However, the only disputed use shown on the Rule 56 record is occasional use of the disputed segment of Elk Valley Road by other subdivision lot owners to access or temporarily view the adjoining USFS land, temporary incidental parking within the platted roadway, and occasional removal of roadway obstructions. Upon creation of an easement by grant or reservation, a rebuttable presumption arises "that the parties 'anticipated such uses as might reasonably be required by a normal development of the dominant tenement.' " Tungsten Holdings, Inc. v. Kimberlin , 2000 MT 24, ¶ 33, 298 Mont. 176, 994 P.2d 1114, (quoting Restatement of Property § 484 cmt. b (1944)), overruled on other grounds by Shammel v. Canyon Res. Corp. , 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912. Plaintiffs have made no Rule 56 factual showing that the disputed use of Elk Valley Road exceeds the frequency or intensity of use reasonably attendant or contemplated with a connected roadway network commonly serving an 86-lot rural residential subdivision. Plaintiffs have thus failed to demonstrate that the disputed use has or will unreasonably increase the burden of Elk Valley Road on Lots 70 and 71.[14] We hold that the 1982 and 1985 warranty deeds that severed Lots 70 and 71 from common ownership, together with the referenced Mustang Ranches plat, created a 60' roadway easement (Elk Valley Road) over those lots to the benefit of the other Mustang Ranches lots for ingress and egress to and from the subdivision and adjoining lands.[15] We hold further that the District Court correctly denied Plaintiffs summary judgment that the disputed use of Elk Valley Road by other subdivision owners either unreasonably increases the intended burden on Lots 70 and 71 or otherwise unreasonably interferes with Plaintiffs' use of those lots.
¶31 2. Whether the District Court erroneously concluded that Plaintiffs had no right to obstruct Elk Valley Road and thus no right to ***472 compensatory damages in trespass and for removal of the obstruction?
¶32 Even if the length of Elk Valley Road benefits all other Mustang Ranches lots, Beardsley and O'Keefe assert that they still had the right to place a gate across the road to prevent unauthorized public access across their property. Except as otherwise provided by the terms of the originating instruments of conveyance, the owner of the servient estate may make any use of the servient estate that does not unreasonably interfere with reasonable permissible use of the easement by the dominant estate owner(s). Mix , 123 Mont. at 372, 214 P.2d at 216 ; Restatement (Third) of Property (Servitudes) § 4.9 (2000). Accord Musselshell Ranch Co. v. Seidel-Joukova , 2011 MT 217, ¶ 19, 362 Mont. 1, 261 P.3d 570. However, in *522 balance of the respective rights of the dominant and servient estate owners, a servient estate owner may place and maintain a gate across a roadway easement only as necessary for the owner's reasonable use of the servient estate without unreasonable interference with the permissible use of the easement by the dominant estate owner(s). Gabriel v. Wood , 261 Mont. 170, 177-78, 862 P.2d 42, 46-47 (1993), overruled on other grounds by Shammel , ¶ 12. Accord Strahan v. Bush , 237 Mont. 265, 268-69, 773 P.2d 718, 721 (1989).
¶33 Except as provided by the terms of the originating instruments of conveyance, the reservation or grant of an easement to the benefit of the owner of the dominant estate, or those authorized thereunder, does not create any right in the general public to use the easement. Woods , ¶ 15 ; Mix , 123 Mont. at 373-74, 214 P.2d at 216-17. In Gabriel , we held that the owner of the servient estate had the right to place a gate across a common road upon proof that "[the] gate was reasonably necessary to prevent injury to the landowner's horses" and "to prevent vandalism and theft" in the wake of prior losses caused by trespassers. Kimberlin , ¶ 39 (discussing Gabriel , 261 Mont. at 177-78, 862 P.2d at 46-57. In contrast, in Kimberlin , we held that the owner of the servient estate had no right to place a gate across the disputed roadway in the absence of proof that the gate was "reasonably necessary" for the protection or enjoyment of the servient estate. Kimberlin , ¶ 40.
¶34 Here, while the owners of Lots 70 and 71 certainly have a right to exclude the general public from traversing over their property via Elk Valley Road, they have no right to unreasonably interfere with the rights of other Mustang Ranches lot owners, including those authorized thereunder, or the Association, as granted by the covenants, to use the roadway easement to the full extent authorized by the terms of the originating instruments of conveyance. In the wake of defeat of ***473 their asserted claim for exclusive ownership and use of the disputed segment of Elk Valley Road, Plaintiffs now resort to the assertion that they nevertheless have the right to place and maintain a gate across the road to prevent unauthorized access by the general public. However, as in Kimberlin and unlike in Gabriel , Plaintiffs have made no supported, non-speculative factual showing beyond cursory assertion that a gate is necessary for that purpose and would not unreasonably interfere with permissible use of the roadway by other subdivision owners. Under these circumstances, the District Court correctly concluded that Beardsley and O'Keefe had no right to place or maintain the subject gates across Elk Valley Road.
¶35 Plaintiffs have further provided no authority or analysis for the proposition that a dominant estate owner may not remove a wrongfully placed gate obstructing an easement way. In the absence of a right to place the gate across the road in the first instance on the record in this case, Plaintiffs have similarly failed to make a supported Rule 56 factual showing that, regardless of their easement rights, the Defendants nonetheless acted unreasonably to Plaintiffs' detriment in the removal of the subject gate(s) from the platted roadway. See Restatement (Third) of Property (Servitudes) § 4.10 cmt. e (2000) (right of dominant estate owner to reasonably maintain, repair, and improve servient estate within scope of easement). While we caution that property loss caused by similar self-help removal of a gate from a private easement way may conceivably be compensable upon proof that, regardless of easement right, a dominant estate owner or covenant-authorized association nonetheless acted unreasonably under the circumstances, Plaintiffs have simply failed to meet their Rule 56 factual burden in this case. We hold that the District Court correctly granted summary judgment to the Association, et al., on Plaintiffs' asserted damages claims.
CONCLUSION
¶36 We hold that the District Court correctly granted summary judgment that the pertinent deeds and referenced subdivision plat created a roadway easement (Elk Valley Road) over Lots 70 and 71 to the benefit of the other Mustang Ranches lots and that the disputed use of the roadway by or through subdivision lot owners did not unreasonably interfere with use of the servient estates. We *523 further hold that the District Court correctly granted summary judgment to the Association, et al., on Plaintiffs' asserted damages claims.
¶37 Affirmed.
We concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.

The 1973 Act imposed more rigid standards and specifications for subdivisions and other divisions of land, as defined by the Act, including, inter alia , local government review and approval of subdivisions. See Title 76, chapter 3, MCA. Prior to 1973, §§ 11-601 through 11-614, R.C.M. 1947, more liberally allowed subdivisions of land by mere filing of unreviewed subdivision plats subject to certain platting and dedication requirements.

The Lee Metcalf Wilderness includes four units in the Madison Range in southwest Montana managed by the United States Forest Service (3 units) and United States Bureau of Land Management (1 unit) within the Beaverhead-Deerlodge and Gallatin National Forests. See The University of Montana, Lee Metcalf Wilderness , https://perma.cc/4UVX-RMRN (last visited July 31, 2019); The University of Montana, Wilderness Acreage Breakdown for the Lee Metcalf Wilderness , https://perma.cc/R9TU-88GA (last visited July 31, 2019).

In accordance with the covenants, the developer executed and recorded an "Assignment and Deed" in 1983 which conveyed to the Association "[a]ll powers, rights and authority to administer all matters regarding ... the overseeing and maintenance of all common areas and roadway easements ... as shown on" the previously filed Mustang Ranches plat. As subsequently adopted and thereafter amended pursuant its non-record bylaws, the Association's non-record "Rules & Regulations" provided that: (1) "[o]nly current (paid up) members, spouses, and resident children ... are allowed" to use subdivision roadways to access adjoining USFS lands; (2) "[g]uests may use the [subdivision] common areas only when accompanied by a current member" of the Association; (3) "[w]heeled vehicles must stay on existing roads"; (4) "[t]respassing on another member's property is not allowed"; (5) "[g]ates or fences on or across [Mustang Ranches] roads or the associated 60' easements are not permitted"; (6) "[a]ny unapproved gates [or] fences ... on or across [subdivision] roads or easements must be removed"; and (7) "[v]ehicles are not permitted on other property owner's land."

The platted widths of the McDeed Creek, Shell Creek, and Cedar Mountain roadways respectively run within the boundaries of Lots 86, 55, and 45 as those roadways approach their respective eastern termini on the boundary between the subdivision and adjoining USFS land.

In contrast, a negative easement is a nonpossessory interest in land that imposes a specific restriction on another's use of the other's own property. Blazer , ¶ 24. In modern American law, the historically distinct concept of a negative easement is subsumed into the concept of a restrictive covenant. See Restatement (Third) of Property (Servitudes) § 1.2(4), cmt. h (2000).

See §§ 70-17-201, -203, MCA (real property covenants).

Easements may also arise by government condemnation or public dedication. Davis v. Hall , 2012 MT 125, ¶ 19, 365 Mont. 216, 280 P.3d 261.

Easements in gross burden a parcel of land to the personal benefit of an individual and thus do not perpetually run with title to the burdened parcel. Blazer , ¶ 24.

Servitudes "designed to implement real estate development plans ... are created by many overlapping transactions. The conveyance of each parcel in the development simultaneously transfers the benefits of previously created servitudes on other parcels, creates new burdens on the developer's remaining land for the benefit of the conveyed parcel, and imposes new burdens on the transferred parcel for the benefit of the rest of the land in the development." Restatement (Third) of Property (Servitudes) § 4.1 cmt. d (2000). See also Restatement (Third) of Property (Servitudes) § 2.7 cmt. f (2000) ("[s]ervitudes for general-plan developments and common-interest communities ... are created when the first conveyance of a lot or unit is made pursuant to the development plan").

The deed term "reservation" or "reserves" historically indicated a grantor's intent to retain the referenced interest for "regrant" to subsequent grantees of the common grantor's estate while use of the terms "exception," "excepting" or "except for" indicated intent to retain the referenced right for the grantor's own use. Wild River Adventures, Inc. v. Bd. of Trs. of Sch. Dist. No. 8 of Flathead Cty. , 248 Mont. 397, 401, 812 P.2d 344, 346 (1991) (citing 3 Powell on Real Property, § 407, pp. 34-39 to 34-42). Under the modern common law of conveyances, these restrictive deed language terms are generally synonymous-merely stating or indicating grantor intent to burden the conveyed property severed from common ownership with a retained interest or restriction to the benefit of the grantor's retained lands. Wild River , 248 Mont. at 401, 812 P.2d at 346. Accord Restatement (Third) of Property (Servitudes) § 2.2 cmt. d (2000).

The lack of a precise description of the location of an intended easement is not fatal to an express easement if the general location of the intended easement is reasonably ascertainable from the instrument, referenced plat, COS, map, prior existence or use, or other extrinsic evidence. Yorlum , ¶¶ 22-27.

Prior to the effective date of the 1973 Subdivision and Platting Act, "plat" referred either to a map of a surveyed parcel of land (indicated by lines, marked courses of lines, and parcel quantity) or a surveyed subdivision of land mapped to scale into specific lots, roadways, and other areas of particular dimension and quantity. City of Missoula v. Bakke , 121 Mont. 534, 542-43, 198 P.2d 769, 773-74 (1948) (Adair, J., dissenting). Compare § 76-3-103(1), (4), (6), (12), and (16), MCA (definitions of "Certificate of Survey," "Division of Land," "Final Plat," "Plat," and "Subdivision").

Distinguishing Wild River , 248 Mont. at 400-02, 812 P.2d at 346-47 (deed language "subject to" insufficient alone to create new easement), the Blazer dissent contrarily asserted that, read together, the qualifying deed language "subject to" clarified or supplemented the COS to together manifest clear intent to reserve the depicted easement over Tract 1 to the highway to the benefit of the retained on-survey tract (Tract 4) adjoining the burdened estate. Blazer , ¶¶ 82-92 (Morris, J., dissenting). We have since so held on a different fact pattern lacking the ambiguity found in Blazer . See Walker , ¶ 13.

The disputed use of Elk Valley Road by other subdivision lot owners is thus further presumptively consistent with the concurrently created "residential purposes only" restriction in the Mustang Ranches protective covenants. In the absence of any cited legal authority to the contrary and the further absence of any Rule 56 factual showing that the disputed use of the roadway easement by other subdivision owners is substantially different than the use of the easement by Beardsley and his permittees, we decline to further address Plaintiffs' cursory assertion that the disputed use violates the "residential purposes only" restriction of the Mustang Ranches covenants.

This holding does not address or implicate whether and to what extent, if any, subdivision lot owners may or may not have the right to traverse or enter upon adjoining lands vis-à-vis the independent rights or restrictions of the owners of those off-plat lands.