FILED

11/19/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0571

DA 23-0571

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 274

PAUL PHILLIP BARDOS AND
MARY L. BARDOS, REVOCABLE TRUST,

      Plaintiffs and Appellants,

  v.

ROBERT L. SPOKLIE,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-2021-1490
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

      Kimberly S. More, Crowley Fleck PLLP, Kalispell, Montana

      For Appellee:

      Marcel A. Quinn, Thomas A. Hollo, Hammer, Quinn & Shaw PLLC,
Kalispell, Montana

Submitted on Briefs:  May 15, 2024

Decided:  November 19, 2024

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     The Paul Phillip Bardos and Mary L. Bardos Revocable Trust (Bardos) appeals the decision of the Eleventh Judicial District Court, Flathead County, granting summary judgment to Robert Spoklie (Spoklie) and thereby denying Bardos's application for injunctive relief enjoining Spoklie from challenged uses of an easement across Bardos's property.  Bardos contends that disputes over material facts remain, and summary judgment was improperly entered.

¶2     We affirm, and address the following issue:

*Did the District Court err by entering summary judgment regarding the scope of Spoklie's easement upon Bardos's property?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     In 2018, Spoklie purchased a tract of land neighboring Bardos's property to the west and south, near Foy's Lake outside Kalispell, Montana.  Spoklie divided the tract into several smaller parcels with the intention of developing residential properties.  The road system in the area is not well developed and easements are utilized to create legal access to the properties.  To that end, in December 2018, Spoklie and Bardos entered into an Easement Agreement that exchanged easements among their respective properties.  As shown in the map below,[1] the easement to Spoklie (Spoklie's Easement) granted access to Bardos's property from Daley Lane, a county road, northwest across Deer Run and then south along Soler Run, while the easement to Bardos (Bardos's Easement) granted access

---

[1] This map is not in the record in this form but was created using word processing software and satellite images for reader convenience based on information contained within the record.

2

to Spoklie's property along Soler Run as it meandered south of Bardos's property, and then north through Spoklie's property lying west of Bardos's property.



¶4  Regarding Spoklie's Easement, the Agreement states:

GRANT OF EASEMENT (Bardos to Spoklie): Bardos hereby grants, conveys and transfers to Spoklie, his heirs, successors and assigns a nonexclusive easement, in as it follows Daley Lane, Deer Run and Soler Run to Spoklie's property. This easement and roadway is more particularly shown and described on Exhibit "A" attached hereto and be this reference

made a part hereof. The centerline of the easement shall be the centerline of the present roadway described above.

The easement granted by Bardos to Spoklie shall be 60 feet in width and shall be used for the following purposes:

(a). For roadway travel (ingress and egress) and for installation, maintenance and repair of underground utility services to the properties described above and any tracts or parcels divided therefrom.

(b). Bardos *further grants to Spoklie an easement for the purpose of widening the corner where Deer Run and Soler Run intersect and to remove trees for the purpose of improving driveability around the corner. Upon completion of corner widening construction the new center line of the roadway as then built shall be the substituted 60 foot easement* and shall be the new 60 foot easement in that affected area. The roadway built on the widened area shall be built substantially equal in grade, width and condition as that provided by the easement and right of way as originally located herein. Further, upon completion of the widening of the roadway then any property lying outside of the new 60 foot easement in the substituted area is automatically abandoned to the extent it has been replaced by the substituted easement area. (See Exhibit A).

(c). Nothing herein contained shall affect the right of Bardos to use the easement and right of way for his own purposes or to go upon or across the easement and right of way at any time for any purpose whatsoever provided that such use will not unreasonably burden or interfere with the rights granted Spoklie. In this regard no gates shall be placed across the roadway, without the written consent of a majority of the affected parties.

Provided however under no circumstances shall the finished road bed be wider than 24 feet. Furthermore, the easement shall be used solely for residential purposes and not for commercial purposes. No signs shall be posted upon the easement property for any purpose unless required by Flathead County for road safety. (Emphasis added).

¶5 Following the easement exchange, Spoklie and his agents began transporting construction equipment to and from his property, along the easement on Bardos's property.

The equipment was utilized for the development of Spoklie's lots. Because the corner where Deer Run intersects with Soler Run proved too sharp and steep for large trucks to navigate during the winter, Spoklie began offloading construction vehicles from their ferrying trucks along the north side of Deer Run, near a meadow on Bardos's property. The construction equipment would then be driven around the sharp corner and the remainder of the way, independent of the truck. The unloading and subsequent loading occurred on the edge of the meadow north of Deer Run—off the roadway surface—but within the 60-foot span of the easement.[2] At times, this process resulted in construction equipment being parked along the side of Deer Run for several days or weeks at a time. Bardos protested and requested that Spoklie stop parking equipment along the edge of the easement. When Spoklie's vehicles continued to be parked along Deer Run, Bardos placed large boulders along the edge of the road, within the easement, to block access to the road's shoulder. Spoklie had one of his workers push the boulders out of the way using construction equipment. Spoklie constructed a gate across Soler Run just south of the southern boundary of Bardos's property but provided Bardos an access code to open the gate. Spoklie expressed an intention to construct a larger set of mailboxes at the corner of Deer Run and Daley Lane, within the boundary of both the county and Spoklie's Easement.

---

[2] Bardos argues that some of Spoklie's equipment activities extended beyond the width of the easement but offered no other evidence in the record to support the contention, which the District Court deemed to be speculative, as further discussed herein. Spoklie's agent testified to having measured the 60-foot right-of-way to ensure equipment would not encroach beyond the easement boundary.

Since the commencement of this action by Bardos, Spoklie has ceased parking equipment along Deer Run.

¶6 Bardos sued for injunctive relief, asserting trespass, nuisance, and quiet title actions against Spoklie regarding the two easements, and requested a temporary restraining order. The District Court denied the request and set a show cause hearing for issuance of a preliminary injunction. The hearing was continued for a month, over Bardos's objection. The parties presented evidence at the show cause hearing on February 16, 2022, and, at the close of the hearing, the District Court denied Bardos's motion for preliminary injunction. Bardos appealed the denial, and this Court affirmed, noting that "Bardos presented evidence showing only minor disturbances to the land surface." *Bardos v. Spoklie*, 2023 MT 16N, ¶ 9, 411 Mont. 389, 523 P.3d 51. Prior to the appeal, Spoklie moved for summary judgment, which the District Court stayed pending the outcome of the appellate proceedings. After issuance of remittitur, Spoklie renewed his request for summary judgment and, after another hearing, the District Court granted the motion, reasoning that Spoklie's activities were "within the scope" of Spoklie's Easement because "[t]he instances of Spoklie temporarily parking construction vehicles off the side of the roadway but within the Spoklie Easement was for the purpose of ingress and egress of the vehicles and incidental to the express rights of ingress and egress," and "[a]s to the location where the equipment-hauling trucks and trailers were parked temporarily, there is no genuine issue of material fact." The District Court also did not take issue with Spoklie's removal of the boulders, as it constituted the clearing of an obstruction to the easement, or rule on Spoklie's proposed erection of a larger set of cluster mailboxes, as it had not yet occurred.

6

Accordingly, the District Court dismissed each of Bardos's claims against Spoklie with prejudice. Bardos appeals.

**STANDARD OF REVIEW**

¶7 "We review a district court's grant of summary judgment de novo." *Johnson v. City of Bozeman*, 2024 MT 168, ¶ 11, 417 Mont. 400, 553 P.3d 432. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). "We must determine whether the court correctly found no genuine issue of material facts existed and whether it applied the law correctly." *Johnston v. Flying S Title & Escrow, Inc.*, 2024 MT 39, ¶ 13, 415 Mont. 332, 545 P.3d 679.

¶8 An easement is an interest held by one person in the land of another, consisting of the right to use the land for a certain purpose. *Woods v. Shannon*, 2015 MT 76, ¶ 10, 378 Mont. 365, 344 P.3d 413. The construction and interpretation of a contract is generally a question of law. *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d 1192. However, we consider the determination of whether an activity is reasonably necessary for the enjoyment of an easement to be a question of fact. *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶¶ 34, 38, 368 Mont. 1, 291 P.3d 1209 (hereinafter, *Mattson II*). In reviewing a District Court's declaratory judgment, we look to whether the District Court's factual findings were "clearly erroneous." *Thibodeau v. Bechtold*, 2008 MT 412, ¶ 14, 347 Mont. 277, 198 P.3d 785. "Findings of fact are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review

of the record convinces us that a mistake has been made." *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254.

## DISCUSSION

¶9      *Did the District Court err by entering summary judgment regarding the scope of Spoklie's easement upon Bardos's property?*

¶10      Bardos contends the District Court's summary judgment order was incorrect because issues of material fact remain regarding the location of Spoklie's parking of vehicles, and because Spoklie's actions exceeded the scope of his easement, constituting trespass and nuisance.

¶11      The assessment of the scope of an easement is informed by the language of the easement grant and is reviewed in accordance with the rules of contract interpretation. *Mary J. Baker Revoc. Tr. v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 18, 338 Mont. 41, 164 P.3d 851; § 70-17-106(1), MCA; *Whitefish Congregation of Jehovah's Witnesses, Inc. v. Caltabiano*, 2019 MT 228, ¶ 28, 397 Mont. 284, 449 P.3d 812 (internal citations omitted). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 18, 352 Mont. 22, 215 P.3d 675 (hereinafter, *Mattson I*) (citing § 28-3-303, MCA). The writing must be taken together as a whole, "so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. Thus, the plain language of the easement grant governs its interpretation so long as the "language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA. "Upon creation of an easement by grant or reservation, a rebuttable

8

presumption arises that the parties anticipated such uses as might reasonably be required by a normal development of the dominant tenement." *O'Keefe v. Mustang Ranches HOA*, 2019 MT 179, ¶ 30, 396 Mont. 454, 446 P.3d 509 (internal quotations omitted). Generally, we regard easements "for the purpose of 'ingress and egress' as specific in nature." *Woods*, ¶ 14 (citing *Clark v. Pennock*, 2010 MT 192, ¶ 27, 357 Mont. 338, 239 P.3d 922).

¶12     The easement granted to Spoklie by Bardos allowed "[f]or roadway travel (ingress and egress) and for installation, maintenance and repair of underground utility services to the properties described above and any tracts or parcels divided therefrom." Additionally, the easement set forth Spoklie's right to use the property "for residential purposes and not for commercial purposes." The language of Spoklie's Easement gave Spoklie and his heirs, successors, and assigns the right to use a 60-foot-wide area through Bardos's property for ingress and egress to Spoklie's partitioned properties, and also explicitly contemplated that Spoklie would undertake "corner widening construction" to establish "grade, width and condition" of the intersection at Deer Run and Soler Run in a manner to improve "driveability around the corner." As we reasoned in *McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 49, 301 Mont. 81, 10 P.3d 794, such a specifically termed easement would also include the right to engage in conduct incidental to ingress and egress within those 60 feet. In *Woods*, we explained that "[a]n express easement for the purpose of ingress and egress, with no other restriction, entitles the holder of the easement and his or her 'family, tenants, and invitees . . . to use the road 24 hours a day by any form of transportation that does not inflict unreasonable damage or unreasonably interfere with the enjoyment' of the land crossed by the easement, also termed the servient estate." *Woods*, ¶ 15 (citing Restatement

9

(Third) of Prop.: Servitudes § 4.10 illus. 1 (2000)). Thus, when the right to use an easement in a particular way is granted, the grantee receives the right to do everything which is reasonably necessary to enjoy that use. *See Mattson I*, ¶ 37.

¶13 In *O'Keefe*, ¶ 30, we held that "temporary incidental parking . . . and occasional removal of roadway obstructions" did not "unreasonably increase the burden" on the servient tenement. Bardos cites *Sampson v. Grooms*, 230 Mont. 190, 197, 748 P.2d 960, 964 (1988), for the proposition that "long term parking and storage of vehicles" is an impermissible use of an ingress easement. We indeed so held in *Sampson* on a record that demonstrated that "[v]ehicles and other items parked and stored for protracted periods of time render[ed] the private road impassable," and that requiring the servient tenant to advance-request the dominant tenant to clear the easement would burden "the servient estate to a greater extent than was contemplated at the time of the grant." *Sampson*, 230 Mont. at 196, 748 P.2d at 964. However, Bardos overlooks that our holding also permitted "reasonable and necessary *short term* parking of vehicles to load and unload cargo or passengers," recognizing that such use would neither "unreasonably burden the servient tenement" nor "interfere with the use and right reserved to the dominant tenement." *Sampson*, 230 Mont. at 197, 748 P.2d at 964 (emphasis added).

¶14 The District Court held that Bardos's opinion regarding vehicles parking outside the 60-foot boundary was speculative, and the summary judgment record supports the District Court's assessment. Spoklie used the easement to move construction equipment around a corner that both parties acknowledged lacked "driveability" at the time they entered their Agreement. In the winter, loading and unloading equipment prior to navigating the turn

10

became necessary to bring the equipment to Spoklie's properties. Spoklie moved the obstructions placed within his easement by Bardos to effectuate the parking and unloading, and made measurements to keep his equipment within the easement's distances. Spoklie did not use his easement for permanent or long-term storage of vehicles, did not block Bardos's use of the road at any time, and has since ceased the practice of loading and unloading machinery at the location. The easement granted to Spoklie specifically contemplated "construction" at that location, anticipating the use of machinery in the area, and recognized Spoklie's intention to further develop "the properties" by installing utility services for residential uses, necessitating the use of heavy equipment for these purposes.

¶15 Bardos contends Spoklie's temporary parking, loading, and unloading equates to civil trespass and nuisance, but that is undermined by our holding herein that Spoklie's uses were within the scope of the Easement Agreement. Trespass requires an intentional entry on another's property "without consent or legal right." *Davis v. Westphal*, 2017 MT 276, ¶ 15, 389 Mont. 251, 405 P.3d 73. "Conduct that would otherwise constitute an intentional trespass is not unlawful if it is privileged conduct pursuant to an easement." *Lee v. Musselshell Cnty.*, 2004 MT 64, ¶ 30, 320 Mont. 294, 87 P.3d 423. Similarly, a nuisance includes any "obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or that *unlawfully* obstructs the free passage or use" of navigable waters or public places. *See* § 27-30-101(1), MCA (emphasis added.) Given our affirming of the District Court's holding on the scope of easement issues, these violations did not here occur.

11

¶16     Bardos also sought to enjoin Spoklie from placing a larger cluster mailbox structure at the corner of Deer Run and Soler Run. The District Court stated that no such conduct had yet occurred but noted that such placement of mailboxes within an easement for ingress and egress would facilitate the use of essential postal services. *See Snyder v. Eberts*, 727 N.W.2d 374 (Wis. Ct. App. 2006). Nevertheless, a case is not ripe for adjudication unless it presents an actual and present controversy that is not hypothetical or speculative. *Advocates for Sch. Trust Lands v. State*, 2022 MT 46, ¶ 20, 408 Mont. 39, 505 P.3d 825. The District Court stated, "Spoklie has taken no substantial step toward replacing the existing mailboxes with a cluster mailbox at any particular location and there is no evidence of Spoklie's imminent threat to do so."

¶17     The District Court concluded that Spoklie did not exceed the scope of his easement by temporarily parking, loading, or unloading construction equipment within the 60-foot width of the easement, and by using the road for his equipment's passage onto his properties for further development. Given the language of the easement and the record on appeal, we conclude the District Court properly determined there was no genuine issue of material fact, and correctly applied the governing standards regarding Bardos's claims.

¶18     Affirmed.

/S/ JIM RICE

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON